# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Eric Lynch, *et. al.*,

                                                    Plaintiffs,

            v.                                              6:25-CV-1495
                                                            (MAD/MJK)

Frank Mellace II., *et. al.*,

                                                    Defendants.

---

Eric Lynch, Bradly Kane, Camryn Lynch,
Christine Lynch, Richard Lynch, Plaintiffs *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge

## ORDER & REPORT-RECOMMENDATION

Eric Lynch ("Lynch"), Bradly Kane, Camryn Lynch, Christine

Lynch, and Richard Lynch commenced this action on October 24, 2025

by filing a Complaint. ("Compl.,"Dkt. 1). Lynch also filed an application

for leave to proceed *in forma pauperis* ("*IFP*"). (Dkt. 2).[1] The Clerk has

sent the Complaint and *IFP* application to this Court for review.

---

[1] Bradly Kane, Camryn Lynch, Christine Lynch, and Richard Lynch have not filed applications to proceed *in forma pauperis*. See Section IV(F) below for a discussion on this issue. Only Eric Lynch has signed the Complaint.

## I.    __BACKGROUND__

Defendants are all private attorneys who represented Lynch at various stages of his March 9, 2017 arrest for burglary in the first degree which resulted in a 12-count indictment and subsequent conviction. (Compl., Dkt 1, ¶¶ 13, 32).

### A.    **First Claim - Frank Mellace II**

Lynch met with Mellace shortly after his arrest and agreed to pay Mellace $12,500.00 to represent him. (Compl., ¶ 15). Plaintiffs allege that Mellace:

> a.  failed to file a motion to have the "duplicitous charges dismissed" (Compl., ¶ 18) which he admitted to "on the record" during "oral argument" (Compl., ¶ 19);
>
> b.  allowed the "Court to seat numerous jurors who admitted on the record to being related to New York State Troopers, the police agency which arrested [Lynch], investigated the alleged crimes, and of which numerous officers testified against [Lynch] at trial." (Compl., ¶ 20);
>
> c.  "knowingly and willfully failed to turn over evidence in his possession which would have the reduced the charges of Criminal Mischief in the second degree, a felony, to a misdemeanor" (Compl., ¶ 22);
>
> d.  failed to object to the County Court "illegally empaneling an anonymous jury in [Lynch's] criminal trial" (Compl., ¶ 24);

    e.  failed to "object to the fact that numerous Jurors who were related to members of the arresting agency," "thus allowing jurors with a very serious conflict of interest to imprison [Lynch] on illegal and [d]uplicitous charges (Compl., ¶ 25);

    f.  failed to "investigate the fact that the Honorable John H. Crandall issued an illegal search warrant for [Lynch's] cell phone" (Compl., ¶ 27);

    g.  "refused to present any defense during [Lynch's] criminal trial even though he was in possession of information and documents which proved that (1) [Lynch] was intoxicated at the time of his arrest and (2) that [Lynch] suffered from numerous mental health issues …" (Compl., ¶ 29);

    h.  "refus[ed] to present an intoxication and/or mental health defense on behalf of [Lynch] during his criminal trial …" (Compl., ¶ 30); and

    i.  "presented no defense, called no witnesses, presented no evidence" …" (Compl., ¶ 31).

Plaintiffs claim that Mellace's actions and/or inactions constitute ineffective assistance of counsel, malpractice, negligence, breach of contract in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

Bradly and Camryn seek monetary damages for "los[ing] their father for 8 and ½ years to Mellace['s] ineffective assistance of counsel, malpractice, negligence, and violations of [Lynch's] Constitutional Rights." (Compl., ¶ 33).

Christine and Richard seek monetary damages for "los[ing] their son for 8 and ½ years" and having to "spend thousands of dollars are on legal expenses …" (Compl., ¶ 33).

## B.    Second Claim - Frank Mellace II (Appeal)

After Lynch's conviction, Christine Lynch and Richard Lynch paid Mellace $20,000 to perfect an appeal. (Compl., ¶¶ 33, 34).

The Complaint alleges that Mellace:

> a. "knowingly and willfully submitted" an "incomplete Record on Appeal" to the New York State Appellate Division, Fourth Department (Compl., ¶ 36);
>
> b. failed to include "evidence of preservation" contained in Lynch's "Motion [p]ursuant to CPL § 330.30, 330.40, and 330.50 …" (Compl., ¶ 36); and
>
> c. "refused to submit to the Appellate Court numerous arguments which would have overturned [Lynch's] [] conviction." (Compl., ¶ 38).

Because of Mellace's "incompetence," Lynch's convictions were affirmed. (Compl., ¶ 37). Plaintiffs claim that Mellace's actions and/or inactions constitute ineffective assistance of counsel, malpractice, and negligence in violation of his Fifth and Fourteenth Amendment Due Process rights. (Compl., ¶ 39).

Plaintiffs seek monetary damages on this claim.

### C.    Third Claim - David A. Longeretta

On July 13, 2021, Longeretta sent a letter to Lynch's parents requesting $7,000 to review his file and to prepare a 440 motion. (Compl., ¶ 40). Richard Lynch paid Longeretta on August 17, 2021. (Compl., ¶ 41).

Plaintiffs allege that "Longeretta strung [Lynch] along with excuses as to why nothing was being done on the 440.10 motion …" (Compl., ¶ 41). On September 19, 2022, Longeretta informed Lynch's parents that the motion would be filed within two weeks. (Compl., ¶ 43). Two weeks later, Longeretta introduced Defendant Brigano to Lynch, representing that Brigano was a "440 specialist who had great success in Herkimer County in the past." (Compl., ¶ 44). Longeretta subsequently told Lynch that the "440.10 Motion on Ineffective Assistance of Counsel was complete" and would be filed by Brigano. (Compl., ¶ 45). That same day, Brigano informed Lynch's mother that he "needed" an additional $5,000 "before he would file Plaintiff's 440.10 motion." (Compl., ¶ 46). Payment was made to Brigano. (Compl., ¶ 46). Brigano subsequently moved to Texas and "never filed the 440.10 Motion" for Lynch. (Compl., ¶ 48).

After Brigano moved to Texas, Lynch informed Longeretta that he "needed to put his name on the 440.10 Motion" but Longeretta "kept making excuses as to why he could not do that …" (Compl., ¶ 48). After several more months of excuses, Longeretta informed Lynch that another attorney, Defendant Schultz, would file the motion on his behalf. (Compl., ¶ 49).

Schultz filed the 440.10 motion but withdrew it on June 6, 2023, without Lynch's authorization. (Compl., ¶¶ 50, 51). After that, Lynch contacted Longeretta who informed Lynch that according to Schultz, Judge Crandall "ordered him to withdraw [Lynch's] 440.10 Motion because he did not like the fact that the 440.10 Motion contained a section on conflict of interest due to the fact that Herkimer County District Attorney Jeffrey S. Carpenter has previously been Plaintiff's College Professor." (Compl., ¶ 54).

Longeretta agreed to file the 440.10 motion and prepared another draft "in which he removed the section about the District Attorney sexually assaulting Plaintiff's classmate …" (Compl., ¶ 55). Longeretta mailed Lynch a copy of the 440.10 motion on June 27, 2023 for his review. (*Id.*). Yet Longeretta never filed the 440.10 motion. (Compl., ¶

56). On or about July 25, 2023, Roth filed the motion on Lynch's behalf. (Compl., ¶ 58). But in June 2024, Roth "dropped Plaintiff's 440.10 Motion in exchange for a position as an Oneida County Public Defender." (Compl., ¶ 59). Lynch then requested that Longeretta "take over as counsel on the 440.10 motion." (Compl., ¶ 60). Longeretta denied Lynch's request, stating that "he had issues with the Herkimer County District Attorney" and that "[Lynch] would have better luck in County Court if he was to proceed *pro se*." (Compl., ¶ 61).

The Complaint further alleges that Longeretta's wife informed Christine Lynch that "Longeretta had a sexual affair with the Herkimer County District Attorney's wife. (Compl., ¶ 63). At some point, Longeretta acknowledged the sexual relationship to Lynch. (Compl., ¶ 64).

Plaintiffs argue that Longeretta's failure to "complete and file Plaintiff's 440.10 Motion" and failure to disclose his relationship with the Herkimer County District Attorney's wife constitutes ineffective assistance of counsel, malpractice, negligence in violations of his due process rights under the Fifth and Fourteenth Amendments. (Compl., ¶¶ 68, 69).

Plaintiffs seek money damages against Longeretta.

### D.    Fourth Claim – Anthony F. Brigano

The Complaint alleges that Lynch provided Brigano with evidence of "jury stacking, jury tampering, an anonymous jury trial, withheld evidence, missing witnesses, prosecutorial misconduct, and judicial misconduct. (Compl., ¶ 71) (cleaned up). However, Brigano only included evidence of ineffective assistance of counsel because "he knew the Judge and knew that he would never grant any relief on anything other than ineffective assistance of counsel." (Compl., ¶ 71). Brigano also failed to "find and/or address the illegal search warrant which was used to obtain evidence from Plaintiff's cellular phone." (Compl., ¶ 79).

The Complaint further alleges that because of Brigano's failure to file the 440.10 motion despite having been paid $5,000, Lynch's parents and children "lost precious years" with him. (Compl., ¶ 77, 78).

Plaintiffs further claim that Brigano's failure to file the 440.10 motion and address the "illegal search warrant" constitutes ineffective assistance of counsel, malpractice, violations of the Model Rules of Professional Conduct, breach of contract, and a violation of Lynch's due

process rights under the Firth and Fourteenth Amendments. (Compl., ¶ 80).

Plaintiffs seek money damages against Brigano.

### E.    Fifth Claim – Kurt D. Schultz

As noted, Schultz withdrew the 440.10 motion on June 6, 2023 without Lynch's authorization. (Compl., ¶ 84). Lynch became aware of the 440.10 motion having been withdrawn only after his mother purchased a copy of the docket sheet from the Herkimer County Clerk's office. (Compl., ¶ 85).

Plaintiffs claim that Schultz's actions constitute ineffective assistance of counsel, malpractice, negligence, breach of contract, unjust enrichment, a violation of the Model Rules of Professional Conduct and a violation of his due process rights under the Fifth and Fourteenth amendments. (Compl., ¶ 89).

Plaintiffs seek money damages against Schultz.

### F.    Sixth Claim – William M. Roth

Plaintiffs allege that Roth's "illegal dropping of [his] 440.10 Motion" and "forc[ing] [Lynch] to proceed *pro se*" constitutes ineffective assistance of counsel, malpractice, negligence, breach of contract, unjust

enrichment, a violation of the Model Rules of Professional Conduct and a violation of his due process rights under the Fifth and Fourteenth amendments.

Plaintiffs seek money damages against Roth.

## II.    *IFP* APPLICATION

Lynch declares in his *IFP* applications that he is unable to pay the filing fee. (Dkt. 2). After reviewing his application, this Court finds that Lynch is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

Courts can *sua sponte* dismiss a case at any time if they determine that an action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up); *see also* 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of

judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Courts must show liberality toward *pro se* litigants and use extreme caution when *sua sponte* dismissing *pro se* complaints. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). Still, courts have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.    DISCUSSION

**The District Court should dismiss the Complaint for lack of subject matter jurisdiction.**

This Court recommends dismissing the Complaint, in its entirety, *with prejudice and without leave to amend* for lack of subject matter jurisdiction. First, Defendants are private attorneys, not state actors, for purposes of § 1983. Second, even if Defendants were state actors, Plaintiff's Fifth Amendment due process clause claims would still warrant dismissal because Defendants are not federal agents acting under the color of federal authority. Finally, Plaintiffs' claims are barred under *Heck* because they necessarily imply the invalidity of Lynch's conviction or sentence.

### A. The District Court should dismiss the Complaint because there are no allegations that Defendants acted "under color of state law."

Lynch's § 1983 Fifth Amendment due process clause, Sixth Amendment for ineffective assistance of counsel, and Fourteenth Amendment due process clause claims should be dismissed because Defendants' purported actions and/or inactions cannot be "fairly attribut[ed] to the state." *Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1027 (2d Cir. 1995) (quotation omitted). An essential element of a § 1983 claim is that the defendants acted "under color of state law." *Wynder v. Goltzer,* No. 24-CV-7925, 2025 WL 2207248, at *4 (S.D.N.Y. Aug. 3, 2025) (citation omitted).

### 1. Fifth Amendment

The Fifth Amendment due process clause applies only to the federal government, and not to state or municipal governments. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."). Yet here, the Complaint does not allege that any federal official violated Lynch's

Fifth Amendment due process rights. The allegations are only against
private attorneys retained by Lynch. Accordingly, the Court
recommends that all Fifth Amendment claims against Defendants be
dismissed *with prejudice and without leave to amend* because any
amendment would be futile. *See, e.g., Robinson v. Wright*, No. 5:21-CV-
1098 (TJM/ML), 2022 WL 2663369, at *3 (N.D.N.Y. Jul. 11, 2022)
(dismissing the plaintiff's Fifth Amendment claims because no
allegations made against any federal official).

### 2. Sixth Amendment Claims

"Private attorneys are generally not 'state actors' for purposes of §
1983." *O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784,
787 (2d Cir. 2020). And because Defendants were not acting "under
color of state law," "an ineffectiveness cause of action [is] inappropriate
in a proceeding brought under § 1983." *Bourdon v. Loughren*, 386 F.3d
88, 90 (2d Cir. 2004). Thus, the Court recommends the District Court
dismiss all Sixth Amendment ineffective assistance of counsel claims
*with prejudice and without leave to amend* because any amendment
would be futile. *See Warren v. Fischl*, No. 15-CV-2829, 2015 WL

6760230, at *8 (E.D.N.Y. Nov. 5, 2015) ("[A]n ineffectiveness claim is not actionable in a proceeding brought under § 1983.") (cleaned up).

### 3. Fourteenth Amendment Claims

The Fourteenth Amendment "applies only to state action." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009). State action requires "conduct by the United States or a state of the United States or by someone acting under the color of their authority." *Mayer v. Mayer*, No. 11-CV-6385, 2012 WL 441182, at *2 (E.D.N.Y. Feb. 10, 2012). Here, Plaintiffs do not allege any state action. *See generally* (Compl.). The Court therefore recommends that the District Court dismiss the Fourteenth Amendment due process claims against all Defendants *with prejudice and without leave to amend* because any amendment would be futile.

### 4. The claims for ineffective assistance of counsel are barred under *Heck v. Humphrey.*

Plaintiffs' § 1983 claims for ineffective assistance of counsel are precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that plaintiffs may not recover damages under § 1983  if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. To demonstrate that their conviction or sentence has been invalidated, the plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. Here, Plaintiffs' § 1983 claims for ineffective assistance of counsel seek money damages and allege that Lynch's conviction and sentence would not have been imposed but for Defendants' respective errors in representing him. Accordingly, Plaintiffs' claims fail under *Heck* because they "necessarily imply the invalidity of [Lynch's] conviction or sentence" and Lynch has provided no indication that his "conviction or sentence has already been invalidated." *Heck,* 512 U.S. at 487; *see also* Complaint ¶ 1 (alleging that Lynch is "currently incarcerated as a state prisoner").[2] The Court therefore recommends that the District Court dismiss the Complaint, in

---

[2] The *Heck* rule is an independent reason to dismiss the claims for ineffective assistance of counsel, in addition to Plaintiffs' failure to allege state action as noted above. *See Warren v. Fischl,* No. 15-CV-2829, 2015 WL 6760230, at *1-2 & n.2 (E.D.N.Y. Nov. 5, 2015), *aff'd,* 674 F. App'x 71 (dismissing claims brought under Fifth, Sixth, and Fourteenth Amendments because, among other things, they were "barred by *Heck v. Humphrey*") (emphasis added).

its entirety, *with prejudice and without leave to amend*. Any amendment would be futile.

## B.   Bradly Kane and Camryn Lynch

Because this Court recommends that Lynch's claims be dismissed for lack of subject matter jurisdiction, his children's claims should be dismissed too. Even if the District Court does not accept this Court's recommendation and allows Lynch's claims to proceed, the claims asserted by Bradly Kane and Camryn Lynch should still be dismissed because they are derivative of Lynch's § 1983 claims. Should the District Court decide that Bradly Kane and Camryn Lynch's claims are not derivative, their claims should still be dismissed because this Court is unable to discern from the allegations in the Complaint if they are minors. And if they are minors, their father may not prosecute this action on their behalf; they need to be represented by an attorney. See discussion at Section B(2) below.

### 1. Derivative Claims

Even if the Court allows Lynch's claims to proceed, Bradly Kane and Camryn Lynch's claims should be dismissed as derivative. Bradly Kane and Camryn Lynch allege that they "lost their father for 8 and ½

years" and that they "lost years of precious time with their father" due to the Defendants' actions. *See generally* (Compl.). The Court interprets their allegations as a claim for loss of consortium. "While the Second Circuit has not addressed whether a plaintiff may bring a loss of consortium claim pursuant to federal civil rights statutes, the weight of authority holds they may not." *Rakchi v. City of New York,* No. 24-CV-01312, 2025 U.S. Dist.LEXIS 186281, at *14-5 (E.D.N.Y. Sept. 22, 2025); *see also Wahhab v. City of New York*, 386 F. Supp. 2d 277, 292 (S.D.N.Y. 2005) ("[Section] 1983 does not support derivative claims for loss of consortium."); *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) ("Loss of consortium is not an independent cause of action, but is derivative . . . [and] Section 1983 does not support a derivative claim for loss of consortium."). Therefore, to the extent Bradly Kane and Camryn Lynch assert a claim for loss of consortium under § 1983, they should be dismissed *with prejudice and without leave to amend.*

## 2. Minor Children

Even if the District Court determines that Camryn Lynch and Bradly Kane's claims are not derivative, and that it has subject matter

jurisdiction, this Court nevertheless recommends that their claims be dismissed *without prejudice and with leave to* amend because the Complaint does not allege how old they are. "A litigant in federal court has a right to act as his or her own counsel." *Cheung v. Youth Orchestra Found.*, 906 F.2d 59, 61 (2d Cir. 1990) (citing 28 U.S.C. § 1654). "The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." *Id.* However, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id.* This is because the choice to appear *pro se* is not a true choice for minors who, under state law, cannot determine their own legal actions. *Id.* (citing Fed. R. Civ. P. 17(b)). Minor children "are entitled to trained legal assistance so their rights may be fully protected." *Cheung v. Youth Orchestra Found.*, 906 F.2d at 61. Thus, the "court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child."[3] *Fauconier v. Comm. on Special*

---

[3] The Second Circuit has carved out limited exceptions to this general rule, including for claims filed on behalf of minors under the Individuals with Disabilities Education Act ("IDEA") and actions relating to social security benefits. Liberally construed, the allegations in the Complaint do not fall within any of the noted, limited exceptions.

*Educ.*, No. 02 Civ. 1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003), *aff'd sub nom. Fauconier v. Comm. on Special Educ.*, 112 F. App'x 85 (2d Cir. 2004). The Court therefore recommends that Bradly Kane and Camryn Lynch's claims be dismissed *without prejudice and with leave to amend.*

### C. Christine Lynch and Richard Lynch

Because this Court recommends that Lynch's claims all be dismissed, his parents' claims should be dismissed as well. Should the District Court reject the recommendation as to Lynch's claims, and conclude that there is subject matter jurisdiction, Christine Lynch and Richard Lynch's claims should nevertheless be dismissed because they are derivate of Lynch's § 1983 claims. Specifically, the Complaint alleges that "Christine Lynch and Richard Lynch lost their son for 8 and ½ years" and that they "lost years of precious time with their son" due to the Defendants' actions. *See generally* (Compl.). The Court interprets their claim as effectively a claim for loss of consortium which the Court recommends be dismissed against all Defendants *with prejudice and without leave to amend* for the same reasons articulated in § IV(C)(2) above.

### D. State Law Claims

The District Court should dismiss the state law claims. The Complaint alleges that Plaintiffs are entitled to damages for "breach of contract" and "unjust enrichment." (Compl., Dkt. 1, at ¶¶ 1, 80, 89, 97) arising from Defendants' representation of Lynch. The Court interprets these claims as arising under New York State law. District courts may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In fact, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, (1988). Having recommended dismissal of the § 1983 federal claims—the claims over which the District Court would have original jurisdiction if state action was present—this Court recommends that the District Court decline to exercise supplemental jurisdiction over any state law claims Plaintiffs may be asserting and that they be dismissed *without prejudice and without leave to amend.*

20

### E. Legal Malpractice and New York Rules of Professional Conduct

In addition to precluding his federal claims for ineffective assistance of counsel, Lynch's conviction precludes Plaintiffs' state-law claims for legal malpractice under New York law. In New York, a plaintiff seeking damages pursuant to a "legal malpractice [claim] arising out of a criminal proceeding . . . bear[s] the unique burden to plead and prove that the client's conviction was due to the attorney's actions alone and not due to some consequence of his guilt." *Britt v. Legal Aid Society*, 95 N.Y.2d 443, 446-47 (2000). A legal-malpractice claim "must allege [the plaintiff's] innocence or a colorable claim of innocence of the underlying offense," and "[i]n order to open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit," *Id.* at 446-7; *accord Sash v. Schwartz*, 356 F. App'x 555, 556 (2d Cir. 2009) (dismissing legal malpractice claim because the plaintiff "failed to establish that his conviction following a guilty plea was overturned"). Accordingly, "a plaintiff cannot assert a cognizable malpractice claim under New York law so long as his conviction stands." M*cKiver v. City of New York*, No.

21

17-CV-4411, 2018 WL 3543906, at *3 (S.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 3628840 (S.D.N.Y. July 23, 2018).

The Complaint does not allege that Lynch's conviction does not stand. To the contrary, the Complaint alleges that Lynch is "currently incarcerated as a state prisoner." (Compl., Dkt. 1, at ¶ 1). Because Lynch is not "free" of his conviction, his malpractice claims are barred under New York law.

Lynch also alleges violations of the "Model Rules of Professional Misconduct." (Compl., Dkt. 1, at ¶¶ 1, 80, 89) which the Court interprets as referring to the New York Rules of Professional Conduct (the "NYRPC"). While a "[v]iolation of a Rule [in the NYRPC] should not itself give rise to a cause of action against a lawyer," a violation of a Rule "may support a legal malpractice claim" "where proximate cause and actual damages can be shown to have [resulted]." *Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*, No. 21-CV-382, 2022 WL 956119, at *11 (S.D.N.Y. Mar. 30, 2022) (collecting cases). Even if Lynch adequately alleges that a violation of a Rule proximately caused him damages, his "conviction precludes [him] from asserting innocence

in a civil suit," and thus precludes him from stating a claim for legal malpractice under New York law. *Britt*, 95 N.Y.2d at 447.

The Court therefore recommends that all claims for legal malpractice and violation of the New York Rules of Professional Conduct be dismissed *without prejudice and without leave to amend.*

### F. Opportunity to Amend

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, any amendment would be futile because the Court lacks subject matter jurisdiction over Plaintiffs' claims. Also, the claims for legal malpractice and violation of NYRPC cannot be amended to assert a viable claim because Lynch's conviction has not been overturned. No amendment would alter these facts. But if the District Court rejects this

Court's recommendations and determines that there is subject matter jurisdiction and the Complaint requires a response or that an amended pleading be filed, Bradly Kane, Camryn Lynch[4], Christine Lynch, and Richard Lynch have not paid the statutory filing fee of $405.00 (only one filing fee in the amount of $405.00 needs to be paid), have not submitted an *IFP* application on their own behalf, and have not personally signed the Complaint. *See* Compl. at 1, 6. Accordingly, should Bradly Kane, Camryn Lynch. Christine Lynch, and Richard Lynch continue this action, they must, within thirty (30) days from the filing date of the District Court's Memorandum Decision and Order, if they are allowed to proceed with this action, (1) either (a) pay the Court's filing fee of $405.00 in full or (b) submit a completed, signed, and certified *IFP* application, and (2) execute a copy of the Complaint or any amended pleading, with their own original signature. If Bradly Kane, Camryn Lynch, Christine Lynch, and Richard Lynch fail to do so, this action will be dismissed without prejudice, without further Order of the Court.

---

[4] This directive is only applicable to Bradly Kane and Camryn Lynch if they are not minors.

## V.    **<u>CONCLUSION</u>**

**WHEREFORE,** based on the findings above, it is hereby

**ORDERED** that Lynch's motion to proceed *in forma pauperis*

(Dkt. 2) is **GRANTED**,[5] and it is further

**RECOMMENDED** that the Complaint (Dkt. 1) be **DISMISSED**

**WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** for lack

of subject matter jurisdiction, and it is further

**RECOMMENDED** that even if the Complaint is not dismissed

for lack of subject matter jurisdiction, the claims asserted by Bradly

Lynch, Camryn Lynch, Christine Lynch, and Richard Lynch should all

be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO**

**AMEND** because their claims are derivative in nature of Lynch's § 1983

claims, and it is further

**RECOMMENDED**, that if Bradly Lynch and Camryn Lynch's

claims are not dismissed as duplicative of Lynch's § 1983, their claims

should still be **DISMISSED WITHOUT PREJUDICE AND WITH**

---

[5] Although his *IFP* application has been granted, Lynch will be required to pay fees that he may incur in this action, including copying and/or witness fees.

**LEAVE TO AMEND** because the Court cannot determine if Bradly Kane and Camryn Lynch are minors, and it is further

**RECOMMENDED**, that if the District Court determines that there is no subject matter jurisdiction, the District Court not exercise supplemental jurisdiction over Plaintiffs' state law claims, and it is further

**RECOMMENDED**, that Plaintiffs' claims for legal malpractice and violation of the New York Rules of Professional Conduct be dismissed *without prejudice and without leave to amend*, and it is further

**ORDERED** that the Clerk provide Plaintiffs with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[6]

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: December 17, 2025.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

---

last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2025 WL 2207248
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Kenneth N. WYNDER, Jr., Plaintiff,

v.

George GOLTZER, Esq., et al., Defendants.

1:24-cv-7925-GHW
|
Signed August 3, 2025

**Attorneys and Law Firms**

Kenneth N. Wynder, Jr., Fort Worth, TX, Pro Se.

Ying Stafford, New York, NY, for Defendant Ying Stafford Esq.

Jeremy Schneider, Rothman, Schneider, Soloway & Stern, LLP, New York, NY, for Defendant Jeremy Schneider Esq.

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

**\*1** Plaintiff Kenneth N. Wynder, Jr. brings this action *pro se* and *in forma pauperis* against his former attorneys in a criminal matter, alleging that they provided him inadequate legal representation resulting in his conviction at trial. He brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of his Sixth Amendment right to effective assistance of counsel and his Fifth and Fourteenth Amendment rights to due process. His complaint may also be read to bring state-law claims for legal malpractice.

Plaintiff's Section 1983 claims fail because Section 1983 only applies to actions taken under color of state law, and the defendants' actions in this case cannot be fairly attributed to the state. Plaintiff's state-law malpractice claims fail because his conviction, as alleged, stands, and an undisturbed conviction precludes a claim for legal malpractice under New York law. Because Plaintiff fails to state a claim under federal or state law, his claims are hereby DISMISSED.

**I. BACKGROUND** [1]

[1]   The facts are drawn from Plaintiff's complaint, Dkt. No. 1 ("Complaint"), and are accepted as true for the purposes of this motion. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Kenneth N. Wynder, Jr. "is presently serving a criminal sentence in the custody of the Federal Medical Center ('FMC') in Fort Worth, Texas." Dkt. No. 1 ¶ 3 ("Complaint"). He was found guilty of "wire fraud, conspiracy, and various tax evasion counts" after a trial in this court before the Honorable Kevin P. Castel in May 2023. *Id.* ¶¶ 14, 47, 53. He was sentenced to 40 months imprisonment in January 2024. *Id.* ¶¶ 60, 65, 68, 70. [2]

[2]   The Complaint does not allege the length of the sentence. The Court judicially notices that Plaintiff was sentenced to 40 months imprisonment on January 19, 2024. *USA v. Wynder, Jr. et al.*, Case No. 1:20-cr-470 (PKC), Dkt. No. 255 at 3.

On October 4, 2024, Plaintiff brought this action *pro se* against the three attorneys that represented Plaintiff in connection with his trial: George Goltzer, Ying Stafford, and Jeremy Schneider. *Id.* ¶¶ 4–5, 54. The first two attorneys, Mr. Goltzer and Ms. Stafford, represented Plaintiff up to and through his trial. *Id.* ¶¶ 4–5. They were his court-appointed attorneys pursuant to the Criminal Justice Act ("CJA"). *Id.* ¶ 11; *see* 18 U.S.C. § 3006A. Mr. Goltzer allegedly exhibited serious medical symptoms throughout the proceedings, including collapsing at the outset of trial and causing the trial to be rescheduled, Complaint ¶ 25, and appearing in court "barely able to stand up, even with the aid of his cane," *id.* ¶ 29. As a result, Mr. Goltzer allegedly failed to properly represent Plaintiff during his trial, including by allegedly "fail[ing] to properly cross-examine and review evidence" from various witnesses, *see id.* ¶¶ 31–38, "fail[ing] to call" various witnesses that would have helped Plaintiff's defense, *see id.* ¶¶ 39–43, and giving an unfocused and "mumbling" closing argument, *see id.* ¶¶ 45–46.

**\*2** Ms. Stafford, who was Mr. Goltzer's co-counsel, *id.* ¶ 5, did not display any medical symptoms, but allegedly failed on multiple occasions to convince Mr. Goltzer to call or cross-examine important witnesses, *id.* ¶¶ 33–34, 43–44, and "failed to instruct the [court] of her knowledge" of Mr. Goltzer's

2025 WL 2207248

medical symptoms and strategic errors in defending Plaintiff, *id.* ¶ 34.

"On August 3, 2023, sixty-nine ... days after Plaintiff's trial," Mr. Goltzer and Ms. Stafford moved to withdraw as counsel for Plaintiff because of Mr. Goltzer's rapidly deteriorating health. *Id.* ¶ 53. Mr. Goltzer allegedly stated that he had been diagnosed with a brain condition that "render[ed] it impossible to competently represent [Plaintiff]" because it slurred Mr. Goltzer's speech and impeded his ability to focus, research, and write. *Id.* The motion to withdraw was granted on August 3, 2023. *Id.* ¶ 54. Mr. Goltzer passed away on December 21, 2023. *Id.* ¶ 55.

Following Mr. Goltzer's and Ms. Stafford's withdrawal, Defendant Jeremy Schneider was appointed as Plaintiff's new CJA counsel. *Id.* ¶ 54. Plaintiff alleges that Mr. Schneider "chose not to file" a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 despite acknowledging Mr. Goltzer's ineffective representation of Plaintiff. *Id.* ¶¶ 60, 63. Mr. Schneider also allegedly "failed to advise either ... Plaintiff or the [c]ourt that he had a conflict of interest in representing Plaintiff at sentencing because of his 40-year personal and professional relationship with [Mr.] Goltzer." *Id.* ¶ 68.

## II. CAUSES OF ACTION

Plaintiff brings claims against the Estate of Mr. Goltzer,[3] Ms. Stafford, and Mr. Schneider[4] for violations of his Sixth Amendment right to effective assistance of counsel and his Fifth and Fourteenth Amendment rights to due process. *Id.* ¶¶ 3–7, 64–70. Because these claims seek redress for violations of rights under the United States Constitution, the Court construes these claims as asserted under 42 U.S.C. § 1983 ("Section 1983"). *See, e.g.*, *Connecticut Citizens Def. League, Inc. v. Thody*, 664 F. Supp. 3d 235, 246 (D. Conn. 2023), *aff'd*, No. 23-724-cv, 2024 WL 177707 (2d Cir. Jan. 17, 2024) ("An action taken directly from the Constitution ... is impermissible. Section 1983 is the exclusive federal remedy for violations of constitutional rights.").

[3]     The Complaint brought a claim against Mr. Goltzer himself. Complaint ¶ 1. On December 2, 2024, the Court ordered that the Estate of Mr. Goltzer be substituted for Mr. Goltzer as a defendant, given the Complaint's allegation that Mr. Goltzer has passed away. Dkt. No. 7.

[4]     The Complaint also brought a claim against "Criminal Justice Act, Inc." Complaint ¶ 1. On December 2, 2024, the Court dismissed Plaintiff's claims against that defendant because that organization does not exist. Dkt. No. 7.

Construed liberally, Plaintiff's Complaint also brings claims under state law for legal malpractice. *See* Complaint ¶ 1 (alleging that "[t]his action places before the Court a malpractice civil lawsuit"); *see also, e.g.*, *id.* ¶¶ 65, 70 (alleging that ineffective representation "caus[ed] Plaintiff a guilty verdict, incarceration, pain and suffering"). Those implied claims are governed by New York law. Because the basis for the Court's jurisdiction over Plaintiff's state-law claims is diversity of citizenship, the Court applies "the choice of law analysis of the forum state." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir. 2006). "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). The potentially conflicting bodies of law in this case are those of New York, where the events giving rise to this action occurred, *see, e.g.*, Complaint ¶¶ 29–63 (alleging trial and sentencing proceedings in the Southern District of New York), Texas, where Plaintiff is incarcerated, *id.* ¶ 3, and Pennsylvania, where Plaintiff "was residing" "at all times relevant to this Action," *id.* "In tort actions,[5] if there is a conflict of laws, New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Curley*, 153 F.3d at 12 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 279 (2d Cir. 1992)).

[5]     Based on the allegations in the Complaint, Plaintiff's malpractice claim is a tort claim. *See, e.g.*, *Wolfson v. Moskowitz*, No. 08-cv-8796 (DLC), 2009 WL 1515674, at *4 (S.D.N.Y. June 1, 2009) (observing that New York choice-of-law analysis applicable to tort claims applies to "tort claim[s] such as legal malpractice"); *Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-cv-2476 (KPF), 2021 WL 1143290, at *3 n.4 (S.D.N.Y. Mar. 24, 2021) (similar). While it is possible to bring a breach-of-contract claim based on an attorney's failure to fulfill the terms of a contract for representation, *see* *Nat. Organics Inc. v. Anderson Kill & Olick, P.C.*, 67 A.D.3d 541, 542 1st Dep't (2009), no contract for representation is alleged

to exist in this case. Defendants were appointed to be Plaintiff's counsel pursuant to the CJA. *See* Complaint ¶¶ 11, 54. Moreover, in any event, "a breach of contract claim premised on [an] attorney's failure to exercise due care or to abide by general professional standards" must be dismissed as "a redundant pleading of [a] malpractice claim." *Levine v. Lacher & Lovell-Taylor*, 681 N.Y.S.2d 503, 506 (1st Dep't 1998); *see also Nelvson v. Carro, Spanbock, Kaster & Cuiffo*, 736 N.Y.S.2d 668, 670 (1st Dep't 2002) (dismissing contract claim that was "predicated on the same allegations and [sought] relief identical to that sought in the malpractice cause of action").

**\*3** When conducting a conflict-of-laws analysis under New York law, courts may assume that there is an actual conflict of laws and proceed directly to the interests analysis. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 47 (2d Cir. 2013) ("Assuming there is an actual conflict between New York and Israeli law, we applied New York's interest-analysis test to determine which law should apply."). "[A]ssuming without deciding that an actual conflict does exist," *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 239 (S.D.N.Y. 2022), the interests analysis in this case compels the application of New York law. "For tort claims, including legal malpractice [claims], 'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.' " *Ferranti*, 2021 WL 1143290, at \*3 n.4 (quoting *Negri v. Friedman*, No. 14-cv-10233 (GHW), 2017 WL 2389697, at \*3 (S.D.N.Y. May 31, 2017)). "New York's interest is predominant when the attorney being sued is licensed in New York and the underlying trial took place in New York." *Wolfson*, 2009 WL 1515674, at \*5 (applying New York law to legal-malpractice claim). New York, accordingly, has the greatest interest in this action, as the entirety of "Defendants' representation in the underlying criminal matter occurred in New York," and Defendants are "licensed to practice as ... attorney[s] in New York." *Ferranti*, 2021 WL 1143290, at \*3 n.4; *see* Complaint ¶¶ 4–6, 29–63. Plaintiff's implied state-law claims for legal malpractice are therefore governed by New York law.

Plaintiff seeks compensatory damages of at least $5,000,000 from each Defendant. Complaint at 20. He also seeks a declaration that Defendants violated his civil rights and breached their "fiduciary duties with respect to those rights." *Id.* He does not seek injunctive relief. *See id.*

## III. PROCEDURAL HISTORY

Plaintiff brought this action on October 4, 2024. Complaint at 21. He was granted leave to proceed *in forma pauperis* on November 25, 2024. Dkt. No. 8.

On May 6, 2025, the Court ordered Plaintiff to show cause as to why his claims should not be dismissed *sua sponte*. Dkt. No. 15. The order warned Plaintiff that his Section 1983 claims appeared to be deficient because Defendants were not alleged to have acted under color of state law. *Id.* at 7 n.6. It explained that "each of the defendants in this case represented Plaintiff in their capacity as court-appointed attorneys pursuant to the CJA," *id.*, and that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant do not act 'under color of state law,' " *id.* (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). The order also observed that Plaintiff's claims for damages and declaratory relief against his former counsel appeared barred under federal and state law because there was no indication that his conviction is not still intact. *Id.* at 6–8. It explained that Plaintiff's claims under federal law for ineffective assistance of counsel were likely barred "unless [he] can demonstrate that [his] conviction or sentence has already been invalidated," as under the rule established by the Supreme Court in *Heck v. Humphrey*, plaintiffs are barred from bringing Section 1983 claims for monetary and declaratory relief if a judgment in their favor "would necessarily imply the invalidity of [their] conviction." *Id.* at 7 (quoting 512 U.S. at 487). The order then explained that Plaintiff's implied state-law claims for legal malpractice appeared to be barred "so long as his conviction stands," as under New York law, "a colorable claim of innocence of the underlying offense" is a prerequisite for a legal-malpractice claim against criminal counsel, and a "conviction precludes ... plaintiffs from asserting innocence in a civil suit." *Id.* at 8 (quoting *Britt v. Legal Aid Soc'y, Inc.*, 95 N.Y.2d 443, 446 (2000)).

The order set a response deadline of May 27, 2025. *Id.* at 9. On May 20, 2025, Plaintiff requested an additional thirty days to respond. Dkt. No. 34. On May 23, 2025, the Court granted Plaintiff's request and extended the deadline for Plaintiff to respond until June 26, 2025. Dkt. No. 35. Plaintiff responded to the Court's order to show cause on June 24, 2025, Dkt. No. 42 ("Response"). Defendants responded to Plaintiff's response in a joint letter on July 21, 2025. Dkt. No. 48 ("Opposition").

### IV. LEGAL STANDARD

**\*4** The Court must dismiss a complaint filed *in forma pauperis* that "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to "raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (quotation omitted). Still, the "special solicitude" that plaintiffs are afforded in *pro se* actions, *id.* at 475 (quotation omitted), does not absolve them of the requirement under Rule 8 of the Federal Rules of Civil Procedure that their complaint provide a "short and plain statement ... showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); *e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 41–42 (2d Cir. 1988).

Rule 8 requires a complaint to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing whether a complaint states a claim upon which relief can be granted, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

### V. DISCUSSION

Plaintiff's Section 1983 claims fail because he does not allege that Defendants acted "under color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 926 (1982). Plaintiff has also provided no indication in his complaint or in his response to the Court's order to show cause that his criminal conviction does not stand. [6] His intact conviction bars his claims for ineffective assistance of counsel under the rule established by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, and bars his claims for legal malpractice under New York law because legal-malpractice claims arising from a criminal proceeding "must allege [the plaintiff's] innocence

or a colorable claim of innocence," and an intact conviction "precludes ... potential plaintiffs from asserting innocence in a civil suit," *Britt*, 95 N.Y.2d at 446–47.

[6]   The Court also takes judicial notice that, as of the date of this opinion, Plaintiff's appeal from his conviction and sentence remains unresolved. *See United States of America v. Wynder, Jr.*, No. 24-213, Dkt. No. 104 (2d Cir. Jan 24, 2024).

Because Plaintiff's complaint fails to state a claim under federal or state law, this action must be dismissed.

#### A. Plaintiff's Section 1983 Claims Fail because He Does Not Allege that Defendants Acted Under Color of State Law

Plaintiff's Section 1983 claims are deficient because Defendants' actions cannot be "fairly attribut[ed] to the state." *Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1027 (2d Cir. 1995) (quotation omitted). An essential element of a claim under Section 1983 is that the defendants acted "under color of state law." *Lugar*, 457 U.S. at 929. The defendants in this case are attorneys who, by court appointment, performed their traditional roles in litigating *against* the government. Complaint ¶¶ 4–7. [7] "[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." *Rodriguez*, 116 F.3d at 66; *accord Housand v. Heiman*, 594 F.2d 923, 924–25 (2d Cir. 1979) (explaining that it "is the law in this circuit" that "public defenders [and] court-appointed defense attorneys do not act 'under color of law' "). The Second Circuit has explained, accordingly, that "an ineffectiveness cause of action [is] inappropriate in a proceeding brought under § 1983." *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004); *accord Warren v. Fischl*, No. 15-cv-2829 (JS) (AKT), 2015 WL 6760230, at *8 (E.D.N.Y. Nov. 5, 2015), *aff'd*, 674 F. App'x 71 (2d Cir. 2017) ("[A]n ineffectiveness claim is not actionable in a proceeding brought under § 1983." (quotations and alterations omitted)). Because Plaintiff's Section 1983 claims are not based on conduct that can be fairly attributed to the state, they must be dismissed.

[7]   It is possible for a private individual to engage in conduct that is "attributable to the state" "[f]or the purposes of section 1983" if "(1) the [individual] acts pursuant to the coercive power of the state

or is controlled by the state ...; (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ...; or (3) when the entity has been delegated a public function by the state ....” *Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)* (quotations and alterations omitted). A Section 1983 claim may also be cognizable against a private individual who conspires with state actors. *Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002)*. Plaintiff makes no attempt in his complaint or his response to the Court's order to show cause to allege that any of these circumstances are present here. His claims allege that Defendants did not do a good enough job in their traditional roles as defense attorneys litigating against the government. *See* Complaint ¶¶ 64–70; Response at 4–10.

**B. Plaintiff's Conviction Bars His Claims for Ineffective Assistance of Counsel under *Heck v. Humphrey***

 **\*5** Plaintiff's Section 1983 claims for ineffective assistance of counsel, as alleged, would also fail under the rule established by the Supreme Court in *Heck v. Humphrey, 512 U.S. 477*. In *Heck*, the Supreme Court held that a plaintiff may not recover damages under Section 1983 if “a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.” *Id.* at 487. To demonstrate that his conviction or sentence has been invalidated, the plaintiff “must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.” *Id.* at 486–87. In *Edwards v. Balisok*, the Supreme Court held that the *Heck* rule also applies to “claim[s] for declaratory relief.” *520 U.S. 641, 648 (1997)*.

Plaintiff's Section 1983 claims for ineffective assistance of counsel seek damages and declaratory relief and allege that his conviction and sentence would not have been imposed but for Defendants' errors in representing him. Complaint at 20; *see id.* ¶¶ 65, 68, 70 (alleging that Defendants' actions “caus[ed] Plaintiff a guilty verdict” and “incarceration”). Accordingly, at least as alleged, Plaintiff's claims would fail under *Heck v. Humphrey* because they “necessarily

imply the invalidity of his conviction or sentence” and Plaintiff has provided no indication that his “conviction or sentence has already been invalidated.” *512 U.S. at 487*; *see* Complaint ¶ 3 (alleging that Plaintiff “is presently serving a criminal sentence”); Response at 5, 11. The *Heck* rule is an independent reason to dismiss Plaintiff's claims for ineffective assistance of counsel, in addition to his failure to allege state action. *See Warren*, 2015 WL 6760230, at \*1–2 & n.2, *aff'd*, *674 F. App'x 71* (dismissing claims brought under Fifth, Sixth, and Fourteenth Amendments because, among other things, they were “barred by *Heck v. Humphrey*”).

Plaintiff's response to the Court's order to show cause identifies several circumstances where the *Heck* rule does not apply, *see* Response at 4–10, but provides no indication that those circumstances are present in this case. Plaintiff is correct, for example, that the Supreme Court has “stress[ed] the importance of the term ‘necessarily’ ” in defining the reach of the *Heck* rule, Response at 7 (quoting *Nelson v. Campbell, 541 U.S. 637, 647 (2004)*), and accordingly, that *Heck* does not apply unless “a prisoner's victory in a § 1983 suit would *necessarily demonstrate* the invalidity of his conviction or sentence,” *McKithen v. Brown, 481 F.3d 89, 102 (2d Cir. 2007)* (emphasis in original). “[W]hat ‘necessarily demonstrates’ the invalidity of a sentence or conviction is often anything but easy to decide,” *Teichmann v. New York, 769 F.3d 821, 829 (2d Cir. 2014)* (Calabresi, J., concurring), and the Second Circuit has not addressed, at least in a published opinion, the general applicability of *Heck* to claims for ineffective assistance of counsel, *but see Kevilly v. New York, 410 F. App'x 371, 375 (2d Cir. 2010)* (summary order) (holding that plaintiff's claims in his proposed amended complaint for ineffective assistance of counsel would “be barred under *Heck*”). “[T]o be entitled to relief on a claim of counsel's ineffective assistance,” a plaintiff must plausibly plead, among other things, “a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.” *Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011)* (quoting *Strickland v. Washington, 466 U.S. 668, 694 (1984)*). Construed liberally, Plaintiff's response to the Court's order to show cause argues that a plaintiff can meet the ineffectiveness standard without “necessarily demonstrating” that his conviction is invalid. *See* Response at 4–5.

 **\*6** In the Court's view, Plaintiff has reason to question whether, as a general matter, a ruling that there is a “reasonable probability” that a plaintiff would not have been convicted but for an attorney's errors would “necessarily

2025 WL 2207248

demonstrate" that the conviction is invalid. *See Teichmann, 769 F.3d at 829* (Calabresi, J., concurring) (reasoning that "the mere fact that success in a § 1983 suit would make it more likely that a conviction or sentence is invalid would seem to be irrelevant to the *Heck* inquiry"). Courts in this circuit, however, have concluded that it would. *See Warren, 2015 WL 6760230, at \*1–2 & n.2; Evans v. Nassau Cnty., 184 F. Supp. 2d 238, 243 (E.D.N.Y. 2002)* (dismissing ineffective-assistance claims under *Heck* because a judgment in the plaintiff's favor "would necessarily imply the invalidity of his criminal conviction and sentence"); *Fleming v. Stradford, No. 10-cv-3345 (KPF), 2018 WL 1033234, at \*18 (S.D.N.Y. Feb. 22, 2018)* (finding claim for ineffective assistance of counsel deficient because, among other things, *Heck* bars "a challenge to Plaintiff's underlying convictions"); *Kevilly, 410 F. App'x at 375* (holding that ineffective-assistance claims in proposed amended complaint would "be barred under *Heck*"). Their conclusions are not unfounded. At a bare minimum, a ruling that there is a reasonable probability that a plaintiff's conviction was the result of his counsel's errors would raise serious questions about the validity of his conviction. And in any event, in this particular case, Plaintiff's claim is that he is owed damages specifically because Defendants' actions caused his conviction and incarceration. *See* Complaint ¶ 65. Because this section of the Court's opinion is mere dicta in light of Plaintiff's failure to allege the state action required to sustain a claim under Section 1983, *see supra* Part V.A, the Court need not resolve whether *Heck* bars Plaintiff's claims for ineffective assistance of counsel. The Court observes, nonetheless, that the prevailing case law in this circuit is that a plaintiff's ineffective-assistance claims are barred under *Heck* because their success "would necessarily imply the invalidity of his criminal conviction and sentence." *Evans, 184 F. Supp. 2d at 243; see also, e.g., Kevilly, 410 F. App'x at 375.*

Plaintiff is also correct that *Heck* may not bar an action under Section 1983 when Section 1983 "was a diligent plaintiff's only opportunity to challenge his conviction in a federal forum," *Artec Constr. & Dev. Corp. v. City of New York, No. 15-cv-9494 (KPF), 2017 WL 5891817, at \*5 (S.D.N.Y. Nov. 28, 2017)* (quoting *Teichmann, 769 F.3d at 828* (Livingston, J. concurring)), but that exception to *Heck* is inapplicable here since a diligent litigant in Plaintiff's position could challenge his conviction on direct appeal, as Plaintiff is currently doing, *see Wynder, Jr.*, No. 24-213, Dkt. No. 104, and if that appeal is unsuccessful, by seeking "remedy in habeas corpus," *Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999).* "Although § 1983 authorizes constitutional tort claims against state officials, it is not an appropriate vehicle for collaterally attacking a

state conviction." *Teichmann, 769 F.3d at 827* (Livingston, J. concurring) (citing *Heck, 512 U.S. at 485–86*). Cases "in which a prisoner challenges the fact or length of his confinement" lie "at the heart of habeas corpus," so in such cases, "habeas is the exclusive federal remedy." *Huang v. Johnson, 251 F.3d 65, 74 (2d Cir. 2001)* (quoting *Jenkins v. Haubert, 179 F.3d 19, 24 (2d Cir. 1999)*). On the other hand, where there is "no remedy in habeas corpus" available to a plaintiff—for example because the plaintiff "is not and never was in the custody of the State"—the *Heck* bar does not apply. *Leather, 180 F.3d at 420; accord Huang, 251 F.3d at 75* (holding *Heck* was inapplicable where plaintiff "ha[d] no habeas remedy because he has long since been released from ... custody"). Here, however, Plaintiff "has a habeas corpus remedy available to him" because he remains "in ... custody" pursuant to his conviction. *Green v. Montgomery, 219 F.3d 52, 61 n.3 (2d Cir. 2000)* ("We have held ... that *Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody).") The exception from *Heck* for plaintiffs without recourse to habeas plainly does not apply in this case.

Because Plaintiff's ineffective-assistance claims would "necessarily imply the invalidity of his conviction or sentence," they are barred by the rule established in *Heck v. Humphrey, 512 U.S. at 487.*

### C. Plaintiff's Legal Malpractice Claims Brought Under New York State Law Are Barred Because His Conviction Remains Intact

In addition to precluding his federal claims for ineffective assistance of counsel, Plaintiff's conviction precludes his state-law claims for legal malpractice under New York law. In New York, a plaintiff seeking damages pursuant to a "legal malpractice [claim] arising out of a criminal proceeding ... bear[s] the unique burden to plead and prove that the client's conviction was due to the attorney's actions alone and not to some consequence of his guilt." *Britt, 95 N.Y.2d at 446–47.* A legal-malpractice claim "must allege [the plaintiff's] innocence or a colorable claim of innocence of the underlying offense," *id. at 446* (quoting *Carmel v. Lunney, 70 N.Y.2d 169, 173 (1987)*), and "[i]n order to open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit," *id. at 447; accord Sash v. Schwartz, 356 F. App'x 555, 556 (2d Cir. 2009)* (same, dismissing legal malpractice claim because the plaintiff "failed to establish that his conviction following a guilty plea was overturned"). Accordingly, "a

plaintiff cannot assert a cognizable malpractice claim under New York law so long as his conviction stands." *McKiver v. City of New York*, No. 17-cv-4411 (GBD) (KHP), 2018 WL 3543906, at *3 (S.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 3628840 (S.D.N.Y. July 23, 2018); *accord D'Amato v. Bray*, 83 F. App'x 380, 381 (2d Cir. 2003) (same).

**\*7** Plaintiff does not allege that his conviction does not stand. To the contrary, he alleges that he "is presently serving a criminal sentence," Complaint ¶ 3, and his response to the Court's order to show cause—submitted from prison—provides no indication that his sentence or conviction are not intact, *see, e.g.*, Response at 11. Because Plaintiff's "conviction[ ] remain[s] intact," his malpractice claims are barred under New York law. *Hooks v. City of New York*, No. 21-cv-10771 (JGK), 2022 WL 16964010, at *9 (S.D.N.Y. Nov. 16, 2022). [8]

[8]    Plaintiff also alleges a violation of his "rights conferred through the ABA Model Rules of Professional Conduct of the State of New York." Complaint ¶ 2, *see also id.* ¶¶ 17, 66. Plaintiff appears to be referring to the New York Rules of Professional Conduct (the "NYRPC"). While a "[v]iolation of a Rule [in the NYRPC] should not itself give rise to a cause of action against a lawyer," NYRPC Preamble, a violation of a Rule "may support a legal malpractice claim" "where proximate cause and actual damages can be shown to have [resulted]," *Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*, No. 21-cv-382 (DF), 2022 WL 956119, at *11 (S.D.N.Y. Mar. 30, 2022) (collecting cases). Still, even if Plaintiff adequately alleges that a violation of a Rule proximately caused him damages, his "conviction precludes [him] from asserting innocence in a civil suit," and thus precludes him from stating a claim for legal malpractice under New York law. *Britt*, 95 N.Y.2d at 447.

## IV. LEAVE TO AMEND IS DENIED

Plaintiff's claims are dismissed without leave to amend. In this circuit, "a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once." *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013). However, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. All. N. Am. Gov't*

*Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998); *see also Burke v. Verizon Commc'ns, Inc.*, No. 18-cv-4496 (PGG) (GWG), 2020 WL 6538748, at *8 (S.D.N.Y. Nov. 6, 2020), *aff'd sub nom. Burke v. Hous. & Servs., Inc.*, No. 23-635, 2024 WL 2207054 (2d Cir. May 16, 2024) (dismissing *pro se* complaint without leave to amend because amendment would be futile). Granting leave to amend Plaintiff's claims against his criminal defense attorneys under Section 1983 would be futile here because Plaintiff's Section 1983 claims against them fall irreparably short of alleging state action. *See Rodriguez*, 116 F.3d at 66 ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."); *Bourdon*, 385 F.3d at 90 (explaining that "an ineffectiveness cause of action [is] inappropriate in a proceeding brought under § 1983" because court-appointed attorneys "do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983 (citing *Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981)))." Granting Plaintiff leave to amend his state-law malpractice claims against his former counsel at this time would be futile because his conviction remains intact. As long as his conviction remains intact, Plaintiff's malpractice claims are categorically barred under New York law. *See Britt*, 95 N.Y.2d at 446–48; *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to amend on futility grounds because "[t]he problem with [the plaintiff's] causes of action" was "substantive; better pleading [would] not cure it").

**\*8** Courts have the authority to dismiss a *pro se* complaint "so long as the plaintiff is given notice and 'an opportunity to be heard.' " *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (quoting *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam)). "The issuance ... of an order to show cause why a complaint should not be dismissed *sua sponte* for a stated reason[ ] will typically suffice to provide notice and an opportunity to be heard." *Nwoye v. Obama*, No. 22-1253, 2023 WL 382950, at *1 (2d Cir. Jan. 25, 2023) (collecting cases); *Kanyan v. U.S. Citizenship & Immigr. Servs.*, No. 24-cv-8564 (RPK), 2025 WL 1489807, at *4 (E.D.N.Y. May 22, 2025) (same); *see also Andrews v. Hall*, No. 22-1298, 2023 WL 309609, at *1 (2d Cir. Jan. 19, 2023) (holding that district court provided adequate notice to *pro se* plaintiff before dismissing his claims without leave to amend because it "warn[ed] [the plaintiff] that his claims were vulnerable to dismissal ... and invit[ed] his response"). The Court issued an order to show cause nearly three months ago explaining each of the deficiencies in Plaintiff's claims that now form the

2025 WL 2207248

basis for the Court's dismissal. Dkt. No. 15 at 7 n.6 (explaining apparent failure to allege state action on part of Defendants); *id.* at 6–7 (explaining that Plaintiff's ineffective-assistance claims appeared to be barred under *Heck v. Humphrey*); *id.* at 8 (explaining that Plaintiff's state-law claims appeared to be barred by his conviction). Plaintiff submitted, and the Court considered, an eleven-page memorandum in response to the Court's order. Dkt. No. 42. Dismissal without leave to amend is appropriate given that Plaintiff has been afforded notice and the opportunity to be heard. *See, e.g.*, *Nwoye*, 2023 WL 382950, at *1; *Kanyan*, 2025 WL 1489807, at *4.

Plaintiff's Section 1983 claims are dismissed with prejudice. Plaintiff's state-law malpractice claims are dismissed without prejudice. Because Plaintiff's state-law claims are dismissed without prejudice, he is not barred from filing a separate action to pursue them if his conviction is ultimately overturned, whether on direct appeal or otherwise. *See Wynder, Jr.*, No. 24-213, Dkt. No. 104 (noticing oral argument regarding direct appeal from Plaintiff's conviction). The Court's determination that Plaintiff's malpractice claims are futile rests solely on Plaintiff's intact conviction. *See* Part III.C. The Court has not determined that Plaintiff's malpractice claims would be futile if he later "free[s] [himself] of the conviction." *Britt*, 95 N.Y.2d at 447. Accordingly, while Plaintiff is denied leave to amend his state-law malpractice claims at this time because the ultimate resolution of Plaintiff's appeal of, and potential collateral attack on, his conviction may take a substantial amount of time, Plaintiff may, to the extent permitted by law, pursue his state-law malpractice claims in a separate action if his conviction is ultimately overturned. [9]

[9]    Any claim Plaintiff might have for malpractice arising from his conviction would not accrue for statute-of-limitations purposes until "the date when the indictment against [him] is dismissed." *Britt*, 95 N.Y.2d at 448.

### V. CONCLUSION

For the foregoing reasons, this action is DISMISSED without leave to amend. Plaintiff's Section 1983 claims are dismissed with prejudice. Plaintiff's state-law malpractice claims are dismissed without prejudice.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment for Defendants, to terminate all pending motions, and to close this case.

SO ORDERED.

### All Citations

Slip Copy, 2025 WL 2207248

---

End of Document          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

1. Wynder v. Goltzer 🕊

   2025 WL 2207248 , S.D.N.Y. , Aug. 03, 2025

**Related References (1)**

2. Wynder v. George Goltzer, Esq.

   2024 WL 4932064 , S.D.N.Y. , Dec. 02, 2024

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 38 of 87
Robinson v. Wright, Not Reported in Fed. Supp. (2022)
2022 WL 2663369

2022 WL 2663369
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher E. ROBINSON, Plaintiff,
v.
Michael WRIGHT, New York State Parole
Officer; Matthew Mullen, New York State
Parole Officer; and Tonia Zimmerman,
New York State Parole Officer, Defendants.

5:21-CV-1098 (TJM/ML)
|
Signed July 11, 2022

**Attorneys and Law Firms**

CHRISTOPHER E. ROBINSON, Plaintiff, Pro Se, Cayuga
Correctional Facility, Post Office Box 1186, Moravia, New
York 13118.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* amended complaint filed by
Christopher E. Robinson ("Plaintiff") to the Court for review.
(Dkt. No. 11.) For the reasons discussed below, I recommend
that Plaintiff's Amended Complaint (Dkt. No. 11) be accepted
in part for filing and dismissed in part without leave to amend.

### I. BACKGROUND

Construed as liberally [1] as possible, Plaintiff's Amended
Complaint alleges that defendants Michael Wright, Matthew
Mullen, and Tonia Zimmerman (collectively "Defendants"),
who are all New York State parole officers, violated his
civil rights by submitting perjured testimony against him.
(*See generally* Dkt. No. 11 [Am. Compl.].) More specifically,
Plaintiff alleges that on April 29, 2021, during a parole
revocation hearing: (1) Defendant Wright testified that (a)
Plaintiff was not allowed to possess a smartphone throughout
his parole, and (b) his reasoning for requesting a search of
Plaintiff's residence was because of law enforcement contact
related to a domestic violence incident involving Plaintiff;
(2) Defendant Mullen testified that he personally searched
Plaintiff's bedroom and found a smartphone under a mattress;
and (3) Defendant Zimmerman (a) omitted, while under

oath, where she found alleged contraband while searching
Plaintiff's residence, and (b) omitted, while under oath,
Officer Delaney when listing the individuals present while
searching Plaintiff's residence. (*Id.*)

[1]    The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

Plaintiff alleges that based on Defendants' perjured
statements, the parole violations against him were sustained
and he has been reincarcerated. (*Id.*) Based on these factual
allegations, Plaintiff asserts the following five causes of
action: (1) a claim that Plaintiff's right to a fair trial was
violated by Defendants pursuant to the Due Process Clause
in the Fourteenth Amendment and 42 U.S.C. § 1983; (2)
a claim that Plaintiff's right to a fair trial was violated by
Defendants pursuant to the Fifth Amendment and 42 U.S.C.
§ 1983; (3) a claim that Defendant Wright violated Plaintiff's
rights in making an arbitrary and capricious decision pursuant
to the Fourteenth and Fifth Amendments; (4) a claim of
malicious prosecution against Defendants pursuant to the
Fifth, Eighth, and Fourteenth Amendments; and (5) a claim
of false imprisonment against Defendants pursuant to the Fifth,
Eighth, and Fourteenth Amendment. (*Id.*) As relief, Plaintiff
seeks $3,000,000.00 in damages against Defendants. (*Id.*)

### II. LEGAL STANDARD GOVERNING INITIAL
REVIEW OF A COMPLAINT
"Notwithstanding any filing fee, or any portion thereof, that
may have been paid, the court shall dismiss the case at any
time if the court determines that ... the action ... (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." 28 U.S.C. § 1915(e)(2).

**\*2** In order to state a claim upon which relief can be granted,
a complaint must contain, *inter alia*, "a short and plain
statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a
plaintiff "show" that he or she is entitled to relief means that
a complaint "must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is *plausible* on its
face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis
added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). "Determining whether a complaint states a plausible
claim for relief ... requires the ... court to draw on its judicial

Case 6:25-cv-01495-MAD-MJK   Document 9   Filed 12/17/25   Page 39 of 87

Robinson v. Wright, Not Reported in Fed. Supp. (2022)
2022 WL 2663369

experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## III. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that his claims be accepted in part for filing and dismissed in part without leave to amend.

### A. Section 1983 Claims Against Defendants in Official Capacities

To the extent that Plaintiff's claims are asserted against Defendants in their official capacities, I recommend that they be dismissed for failure to state a claim upon which relief may be granted. Plaintiff seeks only monetary damages, and Defendants—in their official capacities—are immune from suit pursuant to the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (internal citations omitted)); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe, on the basis of such slender 'evidence,' that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("Using its authority under section 5 of the fourteenth amendment, Congress may abrogate the eleventh amendment in the absence of a waiver by the states, but the civil rights statute 42 U.S.C. § 1983 does not override the eleventh amendment." (internal citations omitted)).

**\*3** Plaintiff alleges that Defendants are New York State Parole Officers. (Dkt. No. 11 at 2-3.) "Because the New York State [Division of Parole ("DOP")] is an arm of the state, [and] Plaintiff [asserts] claims against.... DOP employees[,] ... the Eleventh Amendment bars any claims for damages against ... [D]efendants in their official capacities." *Kirkland v. New York State Div. of Parole*, 20-CV-8606, 2021 WL 706709, at *3 (S.D.N.Y. Feb. 18, 2021) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)).

As a result, I recommend that Plaintiff's claims against Defendants in their official capacities be dismissed because they are immune from suit.

### B. Section 1983 Claims Against Defendants in Individual Capacities

To the extent that Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against Defendants in their individual capacities, I recommend that his claims pursuant to the Fifth and Eighth Amendments and alleging malicious prosecution and false arrest be dismissed but that Defendants be directed to respond to his claim pursuant to the Fourteenth Amendment.

### 1. Fifth Amendment

The Fifth Amendment Due Process Clause applies only to the federal government, and not to state or municipal governments. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."); *Poe v. Ullman*, 367 U.S. 497, 540 (1961) (explaining that prohibitions "against the deprivation of life, liberty or property without due process of law" set forth in Fourteenth Amendment are applicable to state government and same prohibitions in Fifth Amendment are applicable to "the Federal Government"); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009) (holding that any due process claim "against the City is properly brought under the Fourteenth Amendment, not the Fifth Amendment"); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials. Any due process rights plaintiff enjoys as against state government officials ... arise solely from the Fourteenth Amendment due process clause." (internal citations omitted)).

Plaintiff has not alleged that any federal official violated his Fifth Amendment due process rights. Instead, all of his allegations are against state officials. Thus, Plaintiff's due process claims may only be brought under the Fourteenth Amendment, not the Fifth Amendment. *See Dusenbery*, 534 U.S. at 167 (explaining that Fifth Amendment does not apply to State officials); *Ambrose*, 623 F. Supp. 2d at 466-67 (stating that Fifth Amendment does not apply to city officials).

As a result, I recommend that Plaintiff's Fifth Amendment claim against Defendants is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Eighth Amendment

The Eighth Amendment "protects prisoners from cruel and unusual punishment by prison officials," *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015), whereas the Fifth and Fourteenth Amendments "prohibit the government from depriving any person of life, liberty, or property, without due process of law." *Smalls v. Collins*, 10 F.4th 117, 133 (2d Cir. 2021) (internal quotation marks, citations and alterations omitted). Generally, *pro se* plaintiffs bring Eighth Amendment claims to challenge "excessive force," "denial of adequate medical care," "unconstitutional conditions of confinement unrelated to medical care," and the "failure to protect." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013). Though Plaintiff cites the Eighth Amendment, he does not raise issues that are customarily resolved by Eighth Amendment claims; instead, he appears to challenge the lack of "due process of law." (Dkt. No. 11.) Accordingly, Plaintiff's Eighth Amendment claims "relating to [parole revocation] proceedings ... are more properly analyzed as due process violations." *Barclay v. New York*, 477 F. Supp. 2d 546, 555 (N.D.N.Y. 2007) (Hurd, J.).

### 3. Malicious Prosecution/False Imprisonment

**\*4** A plaintiff alleging malicious prosecution and false arrest must demonstrate termination of the proceedings in his favor. *See Henry v. City of New York*, 17-CV-3450, 2021 WL 1648029, at \*4 (S.D.N.Y. Apr. 27, 2021) (citing *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 391 (S.D.N.Y. 2016)) (dismissing the plaintiff's malicious prosecution claim because he did not "secure a favorable termination of the criminal action."); *Aragon v. New York*, 14-CV-9797, 2017 WL 2703562, at \*5 (S.D.N.Y. June 22, 2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)) ("Thus, to recover damages for a false imprisonment claim under Section 1983, a prisoner must demonstrate that his conviction 'has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' ").

Here, Plaintiff alleges that his "parole violations were sustained and [he has] been reincarcerated." (Dkt. No. 11 at 4.) Thus, Plaintiff has not obtained a favorable termination of the underlying proceeding to state a malicious prosecution or false imprisonment claim.

As a result, I recommend that Plaintiff's claims alleging malicious prosecution and false arrest be dismissed for failure to state a claim upon which relief may be granted.

2022 WL 2663369

### 4. Fourteenth Amendment

A final parole revocation proceeding is an administrative proceeding held solely to enable parole authorities to determine whether the parolee violated the terms of parole. *People ex rel. Maiello v. New York State Bd. of Parole,* 65 N.Y.2d 145, 147 (N.Y. 1985). Although a parolee facing revocation of release is not entitled to the "full panoply of rights" due to a defendant in a criminal prosecution, the Supreme Court has held that the revocation of parole implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Morrisey v. Brewer,* 408 U.S. 471, 482 (1972). Upholding the *Morrisey* decision, a year later the Supreme Court further defined the process required during a preliminary parole revocation hearing. *Gagnon v. Scarpelli,* 411 U.S. 778, 786 (1973). "At the ... hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." *Gagnon,* 411 U.S. at 786 (citing *Morrisey,* 408 U.S. at 487). Furthermore, at the final hearing, individuals are given a more detailed hearing with the minimum requirements including:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Id.* (citing *Morrisey,* 408 U.S. at 489).

Here, Plaintiff alleges that his constitutional rights were violated during his parole revocation hearing based on false statements made by Defendants. Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff,* 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourteenth Amendment claims against Defendants in their individual capacities.

## IV. OPPORTUNITY TO AMEND

**\*5** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [2]

---

[2]     *See also Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

**Robinson v. Wright, Not Reported in Fed. Supp. (2022)**

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 42 of 87

2022 WL 2663369

In this instance, I conclude that any further amendments to Plaintiff's Amended Complaint would be futile. As a result, I recommend that Plaintiff's Amended Complaint be dismissed without leave to amend to the extent that it alleges claims pursuant to 42 U.S.C. § 1983 against Defendants in their (1) official capacities, and (2) individual capacities alleging violations of the Fifth and Eighth Amendments, for malicious prosecution, and for false imprisonment. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 11) be **ACCEPTED FOR FILING** with respect to Plaintiff's Fourteenth Amendment due process claim against Defendants in their individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's claims (1) against Defendants in their official capacities, and (2) against Defendants in their individual capacities pursuant to the Fifth Amendment, Eighth Amendment, for malicious prosecution, and for false imprisonment, for failure to state a claim upon which relief may be granted and because it seeks monetary relief against Defendants who are immune from such relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [3]

[3] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*6 NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[4] If you are proceeding *pro se* and served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2663369

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.** **Docket 5:21-CV-01098**<br>Robinson v. Wright et al | — | N.D.N.Y. | Oct. 07, 2021 | Docket |

**History (5)**

**Direct History (2)**

1. Robinson v. Wright
   2022 WL 2663369 , N.D.N.Y. , July 11, 2022

   *Report and Recommendation Adopted by*

2. Robinson v. Wright
   2022 WL 4356214 , N.D.N.Y. , Sep. 19, 2022

**Related References (3)**

3. Robinson v. Wright
   2022 WL 866426 , N.D.N.Y. , Mar. 23, 2022

   *Report and Recommendation Adopted by*

4. Robinson v. Wright
   2022 WL 1504175 , N.D.N.Y. , May 12, 2022

5. Robinson v. Wright
   2023 WL 6122882 , N.D.N.Y. , Sep. 19, 2023

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6760230
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Gregory WARREN, Plaintiff,

v.

Robert FISCHL; Carolyn M. Genovesi; A.D.A. John
J. Mckenna; A.D.A. James R. Watson; A.D.A. Andrea
M. Digregorio; Mary Biunno; Nassau County District
Attorney's Office; Nassau County Court Judge Meryle
Berkowitz; Zelda Jonas; Paul Kowtna; Nassau County
Court Judge David P. Sullivan; Nassau County Court
Judge Allen L. Winick; Nassau County Court Judge
Karen V. Murphy; Nassau County Court; Darin Poole,
C.I. No. 71–91; Det. Laurette Kemp, Sh. No. 737; Det.
Anthony Sorrentino, Sh. No. 728; Det. George Ludwig,
Sh. No. 701; Det. Sgt. Hinchman, Sh. No. Unknown;
Nassau County Police Department; Mathew Muraskin,
Nassau County Legal Aid Society; and Nassau County,
in their individual and official capacities, Defendants.

No. 15–CV–2829(JS)(AKT).
|
Signed Nov. 5, 2015.

**Attorneys and Law Firms**

Gregory Warren, Bronx, NY, pro se.

No appearances for Defendants.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** On May 12, 2015, *pro se* plaintiff Gregory
Warren ("Plaintiff") filed an *in forma pauperis*
Complaint in this Court pursuant to 42 U.S.C. §
1983 ("Section 1983") and 18 U.S.C. § 1961 *et seq.*
("RICO") against A.D.A. Robert Fischl ("A.D.A .Fischl");
Carolyn M. Genovesi ("A.D.A.Genovesi"); A.D.A.
John J. McKenna ("A.D.A.McKenna"); A.D.A. James
R. Watson ("A.D.A.Watson); A.D.A. Andrea M.
DiGregorio ("A.D.A.DiGregorio"); A.D.A. Mary Biunno
("A.D.A.Biunno"); Nassau County District Attorney's Office
("NCDA Office"); Nassau County Court Judge Meryle

Berkowitz ("Judge Berkowitz"); Hon. Zelda Jonas ("Judge
Jonas"); Hon. Paul Kowtna ("Judge Kowtna"); Nassau
County Court Judge David P. Sullivan ("Judge Sullivan");
Nassau County Court Judge Allen L. Winnick ("Judge
Winnick"); Nassau County Court Judge Karen V. Murphy
("Judge Murphy"); Nassau County Court ("County Court");
Darin Poole, C.I. No. 71–91 ("Poole"); Det. Laurette
Kemp, Sh. No. 737 ("Det.Kemp"); Det. Anthony Sorrentino,
Sh. No. 728 ("Det.Sorrentino"); Det. George Ludwig,
Sh. No. 701 ("Det.Ludwig"); Det. Sgt. Hinchman, Sh.
No. Unknown ("Det.Ludwig"); Nassau County Police
Department ("NCPD"); Mathew Muraskin ("Muraskin");
Nassau County Legal Aid Society ("Legal Aid"); Nassau
County ("the County" and collectively, "Defendants"),
accompanied by an application to proceed *in forma pauperis*.
Plaintiff seeks to sue all of the Defendants in their individual
and official capacities.

Upon review of the declaration in support of the application
to proceed *in forma pauperis,* the Court finds that Plaintiff is
qualified to commence this action without prepayment of the
filing fee. *See* 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's
request to proceed *in forma pauperis* is GRANTED.
However, for the reasons that follow, the Complaint is *sua
sponte* DISMISSED WITH PREJUDICE pursuant to 28
U.S.C. § 1915(e)(2)(B)(ii)-(iii).

*BACKGROUND*[1]

[1]     The following facts are taken from Plaintiff's
        Complaint and are presumed to be true for the
        purpose of this Memorandum and Order.

Plaintiff's Complaint seeks to challenge Plaintiff's September
23, 1992 arrest, and the manner in which Defendants
secured his grand jury indictment, conviction, and sentence. The
gravamen of the Complaint is that Defendants knew or should
have known that perjured testimony was used to prosecute
Plaintiff. Thus, Plaintiff claims that his Fourth, Fifth, Sixth,
and Fourteenth Amendment rights were violated and further
claims that Defendants conspired to violate his rights under
the Racketeer Influenced and Corrupt Organizations Statute,
18 U.S.C. § 1961 *et seq.* ("RICO"). For relief, Plaintiff seeks
to recover a monetary damages award in excess of $1 billion.

*PROCEDURAL HISTORY*

Plaintiff is no stranger to this Court. This is Plaintiff's second attempt to litigate these claims in this Court against many of the same Defendants. *See Warren v. A.D.A. Fischl, et al.,* 96–CV–3387 ("*Warren* I"). [2] In addition, Plaintiff filed an unsuccessful Petition for a Writ of Habeas Corpus challenging the same conviction that is the subject of the present Complaint. *See Warren v. Kelly,* 99–CV–4226(ADS) ("*rren II"* ). By Memorandum of Decision and Order dated June 16, 2002, Judge Spatt denied the Petition because it was time-barred. *See Warren v. Kelly,* 207 F.Supp.2d 6 (E.D.N.Y.2002). Warren appealed and, by Order dated March 25, 2003, the appeal was dismissed because it was untimely filed. (*See Warren II* at Docket Entry No. 20.) On February 6, 2007, Warren filed another Petition for a Writ of Habeas Corpus challenging this conviction. *See Warren v. Payant,* 07–CV–0540(JS) (*"Warren* III"). By Order dated March 7, 2008, this Petition was transferred to the Second Circuit Court of Appeals as a Successive Petition and, by Mandate dated April 22, 2009, it was denied. (*See Warren III* at Docket Entries 15 and 16.)

[2]    Plaintiff sued A.D.A. Robert Fischl, A.D.A. Carolyn M. Genovesi, A.D.A. David P. Sullivan, D.A. Denis Dillon, District Attorney's Office of Nassau County, Darin Poole C.I. No. 71–91, Det. Laurette Kemp Sh. No. 737, Det. Anthony Sorrentino Sh. No. 728, Det. George Ludwig Sh. No. 701, Det. Sgt. Hinchman Sh. No. Unknown, Nassau County Police Department, the County of Nassau, Meryl Berkowitz, Mathew Muraskin, the Legal Aid Society of Nassau County, Thomas Gulotta, and Nassau County. By Memorandum and Order dated January 9, 1999, District Judge Arthur D. Spatt granted the Motion to Dismiss brought by the Legal Aid Society of Nassau County, Mathew Muraskin, and Meryl Berkowitz. (*See Warren* I Docket Entry 131; *Warren v. Fischl,* 33 F.Supp.2d 171 (E.D.N.Y.1999)). By Order dated September 26, 2000, District Judge Charles R. Wolle, sitting by designation, granted the remaining Defendants' Motion for Summary Judgment dismissing the balance of the complaint in its entirety. (*See Warren I* Docket Entry 185.) Plaintiff appealed the Order granting summary judgment and, by Mandate dated January 23, 2001, the appeal was dismissed. (*See Warren I* Docket Entry 189.) Given *Warren I,* many of Plaintiff's claims in the instant case are barred by res judicata and/or collateral estoppel. However, because adjudication of Plaintiff's claims is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), *see infra* at 12–17, the Court need not reach this alternate basis for dismissal.

**\*2** Warren also filed an unsuccessful application for a Writ of Error Corum Nobis seeking to vacate, on the ground of ineffective assistance of counsel, the Appellate Division's October 12, 1996 decision (*People v. Warren,* 232 A.D.3d 589, 648 N.Y.S.2d 670 (2d Dep't 1996)) modifying Warren's judgment of conviction rendered on June 20, 1994 in the County Court, Nassau County. *People v. Warren,* 23 A.D.3d 589, 804 N.Y.S.2d 263 (2d Dep't 2005).

*FACTS*

As noted above, Plaintiff again seeks to challenge his 1992 arrest and the manner in which the District Attorney's Office, the individual assistant district attorneys, police officers, and the Nassau County Police Department secured his grand jury indictment, conviction, and sentence. Plaintiff further seeks to challenge the conduct of the state court judges who presided over his underlying criminal proceedings, the Nassau County Court and Court Clerk, as well as his criminal defense attorney and the Nassau County Legal Aid Society.

More specifically, Plaintiff alleges that he was unlawfully arrested on September 23, 1992 and that his premises were unlawfully searched at the time of his arrest. (Compl.¶¶ 2728.) [3] Plaintiff claims, in conclusory fashion, that on October 28, 1992 "Poole, Kemp, Ludwig, Fischl, Watson and McKenna, did knowingly and willfully explicitly/tacitly agree amongst themselves to fabricate Poole, Kemp, and Ludwig's testimony ... and evidence and presented it to the Grand Jury ("GJ") to unlawfully secure an indictment to prosecute Plt on a false predicate...." (Compl.¶ 29.) Plaintiff claims that Fischl called Poole, Kemp, and Ludwig to testify falsely at the grand jury proceeding and that they falsely claimed to have purchased cocaine from Plaintiff on several occasions. (Compl.¶¶ 30–31.) According to Plaintiff, Ludwig also falsely claimed to have observed Plaintiff in possession of, *inter alia,* a "9 millimeter semi-automatic Taurus pistol" as well as "packets of white powdery substance ... cocaine." (Compl.¶ 31.)

[3]    Plaintiff's allegations have been reproduced here exactly as they appear in the Complaint. Errors in

spelling, punctuation, and grammar have not been corrected or noted.

Plaintiff alleges that the grand jury indicted him, but asserts that the indictment was not signed by the foreman and was thus invalid. (Compl.¶ 32.) Plaintiff claims that, in March 1994, Jonas, Kowtna, Winick, Genovesi, Sullivan, Berkowitz, and Ludwig agreed to "fabricate a search warrant for Plt's premises to conceal the fact that NCPD did not have said warrant when they entered and searched Plt's premises ..." and "falsely indicating same was issued on 09/22/92." (Compl.¶¶ 35–36.) Plaintiff next claims that, in March 1994, Poole, Kemp, Sorrentino, Ludwig, Genovesi, Sullivan, and Berkowitz "agree [d] amongst themselves to doctor audio tapes adding Kemp's voice to said tapes ... for the purpose of presenting them to, and misleading, the Trial Jury." (Compl.¶ 37.) Plaintiff also alleges that Poole, Kemp, Sorrentino, Ludwig, Sullivan, Kowtna, and Berkowitz agreed amongst themselves to introduce false witness testimony against Plaintiff at trial. (Compl .¶ 38.) Plaintiff further claims that tape recordings of Plaintiff's telephone calls were "doctored" and used against him at trial. (Compl.¶¶ 38–40.)

**\*3** On April 21, 1994, a jury convicted Warren of Criminal Possession of a Controlled Substance in the First Degree, three counts of Criminal Sale of a Controlled Substance in the Third Degree, six counts of Criminal Possession of a Controlled Substance in the Third Degree, three counts of Criminal Possession of a Controlled Substance in the Fourth Degree, and three counts of Criminal Possession of a Weapon in the Third Degree. *See Warren,* 207 F.Supp.2d at 8. Plaintiff appealed the judgment of conviction claiming that the "trial court erred in refusing to charge that the defendant must know the weight of the controlled substance as an element of the crime of criminal possession of a controlled substance in the first and fourth degrees." *People v. Warren,* 232 A.D.2d 589, 648 N.Y.S.2d 670 (2d Dep't 1996). The Appellate Division agreed, and ruled that "the People were required to prove beyond a reasonable doubt that the defendant had knowledge of both the possession of the substance and the weight." *Id.* at 590, 648 N.Y.S.2d 670. Accordingly, the Court reversed Warren's convictions of Criminal Possession of a Controlled Substance in the fourth degree under counts three, six and nine of the indictment, Criminal Possession of a Controlled Substance in the third degree under count eleven on the indictment, and Criminal Possession of a Controlled Substance in the first degree under count twelve of the indictment, vacated the sentences imposed thereon, and remitted the case for a new trial as to those counts. *Id.* at 589–90, 648 N.Y.S.2d 670; *see also* Compl. ¶

41. The judgment of conviction on the remaining counts was affirmed. *Warren,* 232 A.D.2d at 589, 648 N.Y.S.2d 670.

According to the Complaint, on February 4, 1997, Plaintiff's court assigned defense attorneys agreed with the District Attorney, the Nassau County Police Department, Nassau County, and the Nassau County Court that the remitted charges against Plaintiff would be dismissed in an effort to prevent Plaintiff from presenting his "newly discovered, suppressed evidence proving the Defs founded and rested their case on fabricated evidence...." (Compl.¶ 43.) Plaintiff alleges that in August 2000, several Defendants agreed that they would present false evidence in Federal Court (presumably in *Warren I* ) including: (1) that there was a warrant for the search of Plaintiff's home prior to his arrest; (2) that none of the Defendants colluded to prosecute Plaintiff illegally; (3) that none of the Defendants were involved in a conspiracy to prosecute Plaintiff; and (4) the fraudulent audio tapes presented in the underlying criminal trial. (Compl.¶¶ 44–48.) Plaintiff also claims that, in 2005 and 2011, false evidence was submitted by several Defendants in opposition to Plaintiff's C.P.L. §§ 440.10 and 440.46 motions. (Compl.¶¶ 49–51.)

As a result of the foregoing, Plaintiff alleges seven causes of action. First, Plaintiff claims that his Fourth Amendment Right to be free from unreasonable searches and seizures was violated when, in 1992 and without a warrant, the police searched his home and he was arrested. (Compl.¶¶ 61–62.) Second, Plaintiff alleges that his Fifth Amendment Right to testify in his own behalf was violated when he was denied the opportunity to testify during his trial in 1994. (Compl.¶¶ 63–64.) Third, Plaintiff alleges that he was denied the effective assistance of counsel in violation of his Sixth Amendment Right when his attorneys conspired with law enforcement personnel to: (1) search Plaintiff's home and arrest him in 1992; (2) secure Plaintiff's indictment based on fabricated evidence in 1992; (3) prosecute Plaintiff on false evidence and without jurisdiction in 1994; (4) falsely incriminate Plaintiff in 1994; (5) deny Plaintiff the right to testify on his own behalf in 1994; (6) deny Plaintiff the right to present favorable and exculpatory evidence in 1994; (7) secure Plaintiff's conviction with fabricated evidence from 1994 through 2011; (8) secure and maintain Plaintiff's imprisonment with fabricated evidence from 1994 through 2011; (9) suppress exculpatory evidence from 1994 through 2011; and (10) destroy exculpatory evidence from 1994 through 2011. (Compl.¶ 66.) Plaintiff's fourth, fifth and sixth causes of action allege that his Fourteenth Amendment

Due Process Rights were violated when, in 1994:(1) he was prosecuted without "a valid grant of subject-matter jurisdiction" (Compl.¶¶ 67–68); (2) he was denied his right to a fair trial (Compl.¶¶ 69–70); and (3) he was prevented from introducing favorable evidence at trial (Compl.¶¶ 71–72). Finally, Plaintiff's seventh cause of action alleges that the Defendants violated the RICO statute when they conspired to unlawfully prosecute and imprison him. (Compl.¶¶ 73–74.) For relief, Plaintiff seeks to recover a damages award in excess of $1 billion.

*DISCUSSION*

I. *In Forma Pauperis Application*

**\*4** Upon review of Plaintiff's declaration in support of the application to proceed *in forma pauperis,* the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed *in forma pauperis* is GRANTED.

II. *Application of 28 U.S.C. § 1915*

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. *See id.* § 1915A(b).

Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008); *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 128 (2d Cir.2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

III. *Section 1983*
Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; *accord Rehberg v. Paulk,* ––– U.S. ––––, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Rae v. Cnty. of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)). The applicable statute of limitations for a Section 1983 action is governed by "the law of the state in which the cause of action arose." *Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 1094, 166 L.Ed.2d 973 (2007). In New York, the general statute of limitations for personal injury claims is three years. *See* N.Y. C.P.L.R. § 214(5).

A. *Heck v. Humphrey Bars Plaintiff's § 1983 Claims*
**\*5** When a claim for damages under § 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). The petitioner in *Heck* was an inmate with a direct appeal from his conviction pending, who brought a § 1983 action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's § 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor. *Id.* at 486–87. This

2015 WL 6760230

favorable termination requirement is similarly applicable to a released prisoner, such as Plaintiff, seeking to bring a § 1983 action implying the invalidity of a conviction. *Id.* at 490, n. 10. The Supreme Court in *Heck* enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid. *Id.* at 486–87.

In this case, affording the *pro se* Complaint a liberal construction, Plaintiff arguably relies only on the first of the these methods to maintain that his conviction was invalidated.[4] Although Plaintiff's convictions for First Degree Criminal Possession of a Controlled Substance (count twelve), and three counts of Fourth Degree Criminal Possession of a Controlled Substance (counts three, six, and nine) were reversed on appeal, the Appellate Division affirmed the judgment of conviction and sentence on the remaining twelve counts, namely six counts of Third Degree Criminal Possession of a Controlled Substance (counts two, five, eight, ten, eleven, and thirteen). *See People v. Warren,* 323 A.D.2d 589, 648 N.Y.S.2d 670 (2d Dept.1996), *leave to appeal denied, People v. Warren,* 90 N.Y.2d 865, 683 N.E.2d 1066, 661 N.Y.S.2d 192 (1997).

[4]     Method three does not apply because Judge Spatt denied Plaintiff's application for a writ of habeas corpus, *see Warren v. Kelly,* 207 F.Supp.2d 6 (E.D.N.Y.2002), and Plaintiff has not alleged that methods two and four have any application here.

For purposes of deciding the applicability of *Heck* here, the most informative cases are the Second Circuit's recent decision in *Poventud v. City of New York,* 750 F.3d 121 (2d Cir.2014) (*en banc* ) and *DiBlasio v. City of New York,* 102 F.3d 654 (2d Cir.1996). In the first case, after trial, Poventud's conviction on attempted murder and related charges was vacated as a result of a collateral attack in state court. The state court found that the investigating officers failed to disclose exculpatory evidence that the key government witness and victim had mistakenly identified Poventud's brother as one of his assailants before the witness eventually identified Poventud. *Poventud,* 750 F.3d at 125–26. The case was remanded for a new trial; but, in order to secure his immediate release from prison, Poventud pled guilty to a reduced charge of attempted robbery, contradicting his prior alibi defense that he was not present during the alleged attack on the victim. *Id.* at 124, 126–27.

**\*6** Thereafter, Poventud initiated a section 1983 action for damages against the officials who conducted the original criminal investigation, based on the *Brady* violations that tainted the first trial. The Second Circuit, reversing the district court dismissal of Poventud's civil rights action, found that Poventud's later plea to reduced charges did not warrant a *Heck* bar of his section 1983 action. Explaining that a viable *Brady* claim does not require proof of factual innocence, the Second Circuit concluded that Poventud's subsequent plea to a related, less serious offense was not inconsistent or irreconcilable with his 1983 claim predicated on the *Brady* violation in the first trial. *Id.* at 134–35, 137–38. The Second Circuit acknowledged, however, that Poventud's civil rights claim based on the *Brady* violation was inconsistent with his conviction after the first trial; but that conviction was vacated, eliminating any *Heck* problem relating to the first trial. *Id.* at 134–35, 138.

*DiBlasio* involved a physician who, in 1986, was convicted of the Criminal Sale of a Controlled Substance (cocaine) in the first, second and third degrees, and Criminal Possession of a Controlled Substance in the fourth degree. Four years later, following an unsuccessful appeal in the State courts, the United States District Court for the Eastern District of New York granted *DiBlasio* a writ of habeas corpus based on his claim that the prosecution's failure to produce or identify a confidential informant deprived him of a fair trial. The Second Circuit affirmed. *DiBlasio v. Keane,* 932 F.2d 1038 (2d Cir.1991). The State retried DiBlasio, and he was convicted only on the charge of unlawful possession. Subsequently, DiBlasio brought a malicious prosecution claim against the police officers pursuant to 42 U.S.C. § 1983. The district court dismissed the complaint as time-barred and for failure to state a claim. DiBlasio appealed.

In examining DiBlasio's malicious prosecution claim, the Second Circuit began by outlining the four elements of a common law tort for malicious prosecution: "(1) commencement or continuance of a criminal proceeding, (2) lack of probable cause, (3) existence of malice, and (4) termination in plaintiff's favor." *DiBlasio v. City of New York,* 102 F.3d 654, 657 (2d Cir.1996). Turning to the question of favorable termination, the Circuit wrote: "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Id.* at 658. Ultimately, the Second Circuit rejected DiBlasio's claim because his habeas did not demonstrate his innocence;

hence, his later retrial and conviction of the lesser crime of possession.

Upon careful analysis, the Court finds that *Poventud* is distinguishable and does not save the instant civil rights action from dismissal under *Heck*. Plaintiff's claims in this case are predicated on the allegation that he was unlawfully arrested and that Defendants secured his grand jury indictment, conviction, and imprisonment in violation of his Constitutional rights. Those Section 1983 claims cannot be reconciled with Plaintiff's conviction on the remaining twelve counts, namely six counts of Third Degree Criminal Possession of a Controlled Substance (counts two, five, eight, ten, eleven, and thirteen). Because Plaintiff's success on his civil rights claims in this case would necessarily invalidate the conviction on these counts, none of which have been reversed or vacated, Plaintiff's Section 1983 claims are not cognizable under *Heck*. Like in *DiBlasio*, Plaintiff's conviction was not vacated in its entirety. Rather, Plaintiff's conviction was vacated on just four counts of the sixteen-count indictment. Thus, because success on Plaintiff's Section 1983 claims would implicate the validity of the remaining convictions, *Heck's* bar precludes their adjudication.[5] Accordingly, Plaintiff's Section 1983 claims are not plausible and are thus DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) ("allegations of extensive conspiratorial misconduct between defense counsel and the prosecution would render the [plaintiff's] convictions invalid if they were proved" and thus are barred by *Heck.); Whaley v. Lopez,* 12–CV–2889, 2012 WL 3137900, at *7 (E.D.N.Y. July 30, 2012) (citing *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir.2010) (prosecutorial misconduct claim is barred because such conduct necessarily implies invalidity of the conviction)).[6]

[5]   Although " § 1983 remains a possible remedy when there is no other federal avenue to bring a claim", *Chillemi v. Town of Southampton,* 943 F.Supp.2d 365, 375 (E.D.N.Y.2013), Plaintiff had the opportunity to-and did-seek habeas relief. *See Warren,* 207 F.Supp.2d at *11 (denying petition for a writ of habeas corpus brought under § 2254).

[6]   Although statute of limitation is an affirmative defense, the Court notes that most of the challenged conduct is alleged to have occurred in the early 1990s with the most recent act allegedly occurring

in 2011 (Compl.¶ 51), all well outside the three-year statute of limitation.

B. *Section 1983 Claims Against Judge Berkowitz*[7]*, Muraskin and Legal Aid*

[7]   The Court notes that the allegations against Judge Berkowitz relate only to her conduct in 1994 when she was Plaintiff's criminal defense attorney and was employed by Legal Aid. (Comp. at ¶ 11.)

**\*7** Although Plaintiff's claims seeking to impose Section 1983 liability on Judge Berkowitz, Muraskin, and Legal Aid are barred by *Heck,* such claims are not plausible for the additional reason that these Defendants are not state actors. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " *Hooda v. Brookhaven Nat'l Lab.,* 659 F.Supp.2d 382, 393 (E.D.N.Y.2009) (quoting *Rendell– Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir.2005) (internal quotation marks and citation omitted); *Fabrikant v. French,* 691 F.3d 193, 206 (2d Cir.2012) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." (internal quotation marks and citation omitted)). Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999) (internal quotation marks and citation omitted).

Private actors, such as Berkowitz, Muraskin, and Legal Aid, may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was a " 'willful participant in joint activity with the State or its agents.' " *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970)). Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. *Ciambriello,* 292 F.3d at 323–24. In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25 (citing *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999)). Indeed, "[a]

merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello,* 292 F.3d at 324 (internal quotation marks omitted).

Here, Plaintiff alleges that Muraskin and/or Legal Aid are liable for his claimed Constitutional deprivations simply because Muraskin was Berkowitz's supervisor and Legal Aid was her employer. Attorneys, whether with the Legal Aid Society, court-appointed, or privately retained, are generally not state actors for purposes of Section 1983. *See, e.g., Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *see also Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); there is no *respondent superior* liability under Section 1983. *Iqbal,* 556 U.S. at 676 ("[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. *See Johnson v. Barney,* 360 F. App'x 199, 201 (2d Cir.2010). Thus, Plaintiff has not alleged a plausible Section 1983 claim against Muraskin or Legal Aid and such claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

**\*8** Additionally, Plaintiff has not sufficiently alleged that Berkowitz acted jointly with a state actor or conspired with a state actor to deprive Plaintiff of some constitutional right. Although Plaintiff suggests that his Legal Aid attorney, Berkowitz, conspired with a state court judge to pursue his illegal prosecution, his merely conclusory allegations with no supporting factual averments are insufficient to state a conspiracy. Thus, in the absence of any state action, Plaintiff's Section 1983 claim against Berkowitz is not plausible as a matter of law. *Ciambriello,* 292 F.3d at 325. Moreover, though far from clear, to the extent Plaintiff seeks to assert a cause of action against Berkowitz based on the ineffective assistance of counsel, "an ineffectiveness [claim is not actionable] in a proceeding brought under § 1983." *Bourdon v. Loughren,* 386 F.3d 88, 90 (2d Cir.2004). Accordingly, Plaintiff's Section 1983 claim against Berkowitz is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. *Plaintiff's RICO Claims*

### A. *Judge Jonas, Judge Kowtna, Judge Sullivan, and Judge Winnick are Immune From Such Claims*

Plaintiff's remaining claims against Judges Jonas, Kowtna, Sullivan, and Winnick are subject to dismissal because these Defendants, all of whom are judges employed by the state court, are absolutely immune from suit. It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities. *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citing *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991)). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles,* 502 U.S. at 11, 13 (internal quotation marks and citation omitted (ellipsis in original)).

Rather, judicial immunity is overcome in only two instances. The first is "liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Bliven,* 579 F.3d at 209 (quoting *Mireles,* 502 U.S. at 11). The second is liability arising from actions taken " 'in the *complete absence* of all jurisdiction.' " *Basile v. Connolly,* 538 F. App'x 5, 7 (2d Cir.2013) (emphasis in the original) (quoting *Mireles,* 502 U.S. at 1112). Here, nothing in Plaintiff's Complaint suggests that either exception applies to overcome absolute judicial immunity. Although Plaintiff complains that the judges acted without jurisdiction, such allegation is belied by the fact that he was tried and convicted in the state court, and such conviction was, in large part, affirmed on appeal. *See People v. Warren,* 323 A.D.2d 589, 648 N.Y.S.2d 670 (2d Dept.1996), *leave to appeal denied, People v. Warren,* 90 N.Y.2d 865, 683 N.E.2d 1066, 661 N.Y.S.2d 192 (1997). There can be no doubt that state court prosecution for violations of state law relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Plaintiff's claims against Judges Jonas, Kowtna, Sullivan, and Winnick are not plausible as a matter of law and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

### B. *Plaintiff has not Adequately Alleged RICO Claims Against the Remaining Defendants*

**\*9** Plaintiff also alleges that Defendants have violated his rights under RICO. RICO makes it a crime to conduct "an enterprise's affairs through a pattern of racketeering activity."

18 U.S.C. § 1962(c). "18 U.S.C. § 1964(c) provides a private right of action for '[a]ny person injured in his business or property by reason of a violation of Section 1962.' " *Goldfine v. Schienzia,* 118 F.Supp.2d 392, 399 (S.D.N.Y.2000), quoting 18 U.S.C. § 1964(c) (emphasis omitted). The statute of limitations for a civil RICO claim under 18 U.S.C. § 1964(c) is four years. *Frankel v. Cole,* 313 F. App'x 418, 419 (2d Cir.2009) (citing *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987)). The statute of limitations " 'begins to run when the plaintiff discovers or should have discovered the RICO injury.' " *Frankel,* 313 F. App'x at 419 (quoting *In re Merrill Lynch, Ltd. P'Ships Litig.,* 154 F.3d 56, 58 (2d Cir.1998) (*per curiam)* ).

Here, given that Plaintiff was convicted in 1994, his alleged RICO injury occurred well outside the four-year statutory period. Even accepting Plaintiff's allegation that the most recent action undertaken as part of the conspiracy occurred on April 21, 2011 (Compl.¶ 51), it too is outside the statutory period given Plaintiff's filing of this Complaint on May 12, 2015. Thus, Plaintiff's RICO claims are clearly time-barred.

Moreover, Plaintiff's RICO claims are not plausible because wholly absent from the Complaint are any factual allegations that any of the Defendants received money from racketeering activities, had an interest in an enterprise engaged in racketeering, or conspired to violate Section 1962. Plaintiff does not allege any facts which would support an inference that Defendants were engaged in racketeering activity or involved in an enterprise which affects interstate or foreign commerce. Thus, even construing Plaintiff's Complaint liberally, there is no factual or legal basis for a RICO claim. In the absence of any such allegations, together with the unexplained twenty-year delay in bringing such claims, Plaintiff's RICO claims are not plausible and are DISMISSED

WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV. *Leave to Amend*

Given the Second Circuit's guidance that a *pro se* complaint should not be dismissed without leave to amend unless amendment would be futile, *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000), the Court has carefully considered whether leave to amend is warranted here. Because the defects in Plaintiff's claims are substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint is DENIED.

### *CONCLUSION*

For the reasons set forth above, Plaintiff's application to proceed *in forma pauperis* is GRANTED, however the Complaint is *sua sponte* DISMISSED WITH PREJUDICE for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

 **\*10** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is DENIED for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and to mark this case CLOSED.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6760230

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (7)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Brief for Defendants-Appellees**<br>Gregory WARREN, Plaintiff - Appellant, v. A.D.A Robert FISCHL, A.D.A Caroyln M. Genovesi, Ada John J. Mckenna, Ada James R. Watson, Andrea M. Digregorio, Ada Mary Biunno, Nassau County District Attorney's Office, Meryle Berkowitz, Honorable Judge Zelda Jonas, Honorable Judge Paul Kowtna, A.D.A. David P. Sullivan, Judge Allen L. Winick, Karen V. Murphy, Ncc Court Clerk, Nassau County Courthouse, Darin Poole, C.I. No. 7191, Detective Anthony Sorrentino, Sh. No. 701,<br>2016 WL 5403060 | PDF | C.A.2 | Sep. 23, 2016 | Brief |
| **2. Brief for Appellant**<br>WARREN, G., Appellant, v. FISCHL et al., Appellee.<br>2016 WL 3537015 | PDF | C.A.2 | June 23, 2016 | Brief |
| **3. Brief for Appellant**<br>WARREN, G., Appellant, v. FISCHL et al., Appellee.<br>2016 WL 3551440 | PDF | C.A.2 | June 23, 2016 | Brief |
| **4. Brief for Appellant**<br>WARREN, G., Appellant, v. FISCHL et al., Appellee.<br>2016 WL 1128188 | PDF | C.A.2 | Mar. 18, 2016 | Brief |
| **5. Docket 16-9388**<br>GREGORY WARREN v. ROBERT FISCHL, ET AL. | — | U.S. | May 31, 2017 | Docket |
| **6. Docket 15-3919**<br>WARREN v. FISCHL | — | C.A.2 | Dec. 03, 2015 | Docket |
| **7. Docket 2:15cv02829**<br>WARREN v. FISCHL ET AL | — | E.D.N.Y. | May 12, 2015 | Docket |

**History (3)**

**Direct History (3)**

1. Warren v. Fischl 🖘
   2015 WL 6760230 , E.D.N.Y. , Nov. 05, 2015

*Judgment Affirmed by*

2. Warren v. Fischl
   674 Fed.Appx. 71 , 2nd Cir.(N.Y.) , Jan. 06, 2017

*Certiorari Denied by*

3. Warren v. Fischl
   583 U.S. 847 , U.S. , Oct. 02, 2017

KeyCite Overruling Risk

Overruling Risk   Exxon Mobil Corp. v. Saudi Basic Industries Corp.,   U.S., March 30, 2005

2003 WL 21345549
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard FAUCONIER, Plaintiff,

v.

COMMITTEE ON SPECIAL EDUCATION, District 3, New York City Board of Education, Defendant.

No. 02 Civ.1050 RCC.
|
June 10, 2003.

**Synopsis**

Noncustodial parent sued special education committee under Individuals with Disabilities Education Act (IDEA), challenging denial of mainstream educational placement for student. Committee moved to dismiss. The District Court, *Casey*, J., held that: (1) nonattorney parent could not proceed pro se, representing interests of student under IDEA, and (2) *Rooker-Feldman* doctrine barred suit.

Case dismissed.

West Headnotes (2)

**[1]    Infants**  ⚷  **Schools and education**

Nonattorney parent could not proceed pro se to represent interests of student in suit under Individuals with Disabilities Education Act (IDEA) challenging school committee's decision to retain student in special private education setting rather than mainstreaming him.
20 U.S.C.A. § 1400 et seq.

17 Cases that cite this headnote

**[2]    Courts**  ⚷  **Constitutional questions, civil rights, and discrimination in general**

*Rooker-Feldman* doctrine, precluding federal court review of state court final judgment,

barred suit under Individuals with Disabilities Education Act (IDEA) by noncustodial parent challenging school district's denial of mainstream educational placement for disabled student; claimant was trying to obtain federal court reversal of state court determination that he could not represent student's interests under IDEA, because he was not custodial parent. 20 U.S.C.A. § 1400 et seq.

4 Cases that cite this headnote

OPINION & ORDER

CASEY, J.

I. Background

**\*1** *Pro se* Plaintiff Richard Fauconier ("Plaintiff") initiated this action on behalf of himself and his son, M.F., [1] against the Committee on Special Education of District 3 of the New York City Board of Education ("Defendant") alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* On July 24, 2002, Defendant filed a motion to dismiss the complaint. By Report and Recommendation ("Report") Judge Ronald Ellis recommended that Defendant's motion to dismiss be granted and that Plaintiff's complaint be dismissed without prejudice. Thereafter, the Plaintiff filed timely objections to the Report. Accordingly, the Court reviews the matter *de novo.* Fed.R.Civ.P. 72(b).

1        In the interests of privacy, the child will be referred to in these proceedings as "M.F."

The Plaintiff is the non-custodial parent of M.F., who has been diagnosed with Attention Deficit Hyperactive Disorder. M.F. is a student at a private institution for emotionally, physically and mentally challenged students. Due to his disability, public funds are used to pay for M.F.'s education.

On five separate occasions, from August, 1994 to March, 2001, M.F. was evaluated by District 3. As a result of each evaluation, District 3 found it to be in M.F.'s best interest that he continue to attend a private educational institution. The Plaintiff, however, sought to have his son placed in a mainstream school. District 3 denied Plaintiff's request

2003 WL 21345549

for a reevaluation and transfer of M.F. and declined to include Plaintiff as a member of M.F.'s IEP team. In reaching these decisions, District 3 cited Plaintiff's status as the non-custodial parent.

As a result, on November 5, 2001, Plaintiff filed an order to show cause in an Article 78 Special Proceeding in the State of New York Supreme Court, New York County. Plaintiff sought: (1) a reevaluation of M.F.; (2) placement of M.F. in a mainstream academic setting with support services; (3) permission for M.F. to take the standardized testing for fourth grade math and English; and (4) a position on M.F.'s IEP team with full access to his educational records. By final disposition, the state court denied Plaintiff's claims in light of his non-custodial status. Plaintiff then commenced this federal action on February 11, 2002.

## II. Discussion

 [1]    In his Report, Judge Ellis recommended that Plaintiff's complaint be dismissed without prejudice on the ground that under *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), Plaintiff could not proceed *pro se* to litigate M .F.'s interests. For the following reasons, the Court concludes that pursuant to its affirmative duty to enforce the *Cheung* rule, the claims that Plaintiff brings on behalf of his son must be dismissed. Additionally, the Court finds that Plaintiff's remaining claims brought on his own behalf are barred by the *Rooker–Feldman* doctrine.

### A. Representing Children Pro Se

The Second Circuit has made clear in *Cheung* that a court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child. *See id.* at 61. In fact, the Second Circuit in *Cheung* enforced this affirmative duty prior to addressing the jurisdictional issues present in that case. This Court therefore has a duty to enforce the *Cheung* rule, for " '[t]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." ' *Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 125 (2d Cir.1998) (quoting *Johns v. County of San Diego,* 114 F.3d 874, 877 (9th Cir.1997). On the other hand, a parent is entitled to represent himself when claiming that his rights under the IDEA have been violated. *Id.* at 126. Here, Counts One and Two of Plaintiff's Amended Complaint are claims that exclusively concern M.F.'s rights. Additionally, Counts Three and Five concern both Plaintiff's and M.F.'s rights. Under

*Cheung,* however, Plaintiff may not litigate the interests of M.F. Therefore, at the outset the Court dismisses Counts One and Two of Plaintiff's complaint. Counts Three and Five are dismissed to the extent that they concern M.F.'s rights. Thus, the remaining claims not barred by *Cheung* are Plaintiff's record-access claim, Plaintiff's claim that he be permitted a seat on M.F.'s IEP team, and his claim that Defendant has violated his Fourteenth Amendment rights.

### B. Rooker–Feldman

 **\*2**   [2]    The *Rooker–Feldman* doctrine holds that a party may not take an appeal of a state court decision to a federal court. Plaintiff, however, requests that this Court do precisely that.

Plaintiff's claims that he be permitted access to M.F.'s educational records and that he be given a seat on M.F.'s IEP team were precisely the subject of Plaintiff's order to show cause brought in state court. Therefore, as discussed below, under the *Rooker–Feldman* doctrine these claims may not be re-litigated here. Accordingly, the Court finds that it lacks subject matter jurisdiction over these claims.

A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and therefore may be raised at any time by either party or *sua sponte* by the Court. *Moccio v. New York State Officers of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Generally speaking, the *Rooker–Feldman* doctrine directs that a federal district court lacks authority to review the final judgment of state courts in judicial proceedings. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). The doctrine is derived from two Supreme Court decisions. In the first, *Rooker v. Fidelty Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Court held that appeals from state court judgments are reserved to the Supreme Court, and therefore the lower federal courts lack jurisdiction to entertain such appeals. Sixty years later, in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court extended *Rooker* by barring reconsideration of claims that were implicitly decided by the state court as well. In crafting the "inextricably intertwined" test, the Court held:

> If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial

proceeding ... then the district court is in essence being called upon to review the state-court decision. This the district court may not do.

*Feldman,* 460 U.S. at 483–84 n. 16.

Under the *Rooker–Feldman* doctrine, the Court may address two questions: (1) whether a party is attempting to directly challenge a state court decision in federal court and (2) whether such a suit is inextricably intertwined with the previous state court proceedings. Given that a challenge under the *Rooker–Feldman* doctrine as an inquiry into the Court's subject matter jurisdiction, the Court may consider materials extrinsic to the complaint. *Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002). The Court now turns to this inquiry.

In his attempt to appeal the decision of the state court to the federal courts, Plaintiff asserts that this action contains claims under the IDEA that were never raised in the state court proceeding. *See* Plaintiff's Memorandum of Law ¶ 38. The Court, however, finds Plaintiff's assertion disingenuous. In his November 15, 2001 Affidavit filed in New York Supreme Court, Plaintiff himself stated that his cause of action was partly "governed by the federal Individuals with Disabilities Education Act (IDEA)." Moreover, in state court Plaintiff asserted that despite the fact that he is M.F.'s non-custodial father, *Doe v. Anrig,* 651 F.Supp. 424 (D.Mass.1987), supported his claim that he could still assert claims under the IDEA. *See* Plaintiff's Nov. 15, 2001 Aff. ¶ 7(i). Nevertheless, the state court concluded that because Plaintiff is not the custodial parent, he lacked decision making authority for M.F. *See* Ex. O to Am. Compl.

**\*3** On December 6, 2001 Plaintiff filed this action contending that the state court was insensitive to the facts forming the basis of his federal claims and that the state

court failed to protect his federal rights. Plaintiff's Amended Complaint asserts that the state court "made no mention of *Doe v. Anrig"* and that "apparently, no judicial notice is taken of cases in federal district courts such as *Doe v. Anrig,* and the educational system's escape of scrutiny is assured." Am. Compl. ¶¶ 33, 34. Accordingly, the Court finds that Plaintiff's pleadings demonstrate that he has brought this action because he is dissatisfied with the state court decision. In effect, Plaintiff is asking the Court to review the state court's determination that he lacks educational decision making authority because he is not the custodial parent. The *Rooker–Feldman* doctrine squarely bars a litigant from complaining of a result in state court by asking a federal court to entertain an appeal of that result. *See Kropelnicki,* 290 F.3d at 128. To consider Plaintiff's claims, the Court would be required to determine whether the IDEA protects the rights of both custodial and non-custodial parents, a question the state court has already ruled upon in this case. This type of request is squarely barred under the *Rooker–Feldman* doctrine. *See Corsini v. Ross,* 152 F.3d 917 (2d Cir.1998) ("[D]istrict courts 'do not have jurisdiction ... over challenges to state court decisions ... even if those challenges allege that the state court's action was unconstitutional .'") (quoting *Feldman,* 460 U.S. at 486). Accordingly, the Court lacks subject matter jurisdiction in this case.

### III. Conclusion

For the reasons stated above, under *Cheung* Plaintiff's claims brought on behalf of M.F. are dismissed. Additionally, Plaintiff's remaining claims pertaining to his rights under the IDEA are dismissed under the *Rooker–Feldman* doctrine. The Clerk of the Court is hereby directed to close the case.

### All Citations

Not Reported in F.Supp.2d, 2003 WL 21345549

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Petition for Rehearing, for Pro-Se plaintiff-appellant**<br>Richard FAUCONIER Plaintiff-Appellant, v. COMMITTEE ON SPECIAL EDUCATION, District 3, New York City Board of Education, Defendant-Appellee,<br>2004 WL 3507929 |  | C.A.2 | Oct. 14, 2004 | Petition |
| **2.  Docket 03-7793**<br>FAUCONIER v. COMMITTEE ON SPECIAL | — | C.A.2 | Aug. 05, 2003 | Docket |
| **3.  Docket 1:02CV01050**<br>FAUCONIER v. COMMITTEE ON SPECIAL | — | S.D.N.Y. | Feb. 11, 2002 | Docket |

**History (3)**

**Direct History (3)**

🚩 1.  Fauconier v. Committee of Special Educ.
2002 WL 31235786 , S.D.N.Y. , Oct. 02, 2002

*Report and Recommendation Adopted by*

🔴 2.  Fauconier v. Committee on Special Education
2003 WL 21345549 , S.D.N.Y. , June 10, 2003

*Decision Affirmed by*

3.  Fauconier v. Committee on Special Educ., Dist. 3, New York City Bd. of Educ.
112 Fed.Appx. 85 , 2nd Cir.(N.Y.) , Sep. 30, 2004

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 62 of 87

McKiver v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 3543906

2018 WL 3543906
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jeffery MCKIVER, Plaintiff,

v.

CITY OF NEW YORK, Thomas Gerding,
Alberto Pingy, George Garica, Amanda
Levy, Zwi Wasserstein, Defendants.

1:17-cv-04411 (GBD) (KHP)

|

Signed 02/16/2018

**Attorneys and Law Firms**

Jeffery McKiver, Danbury, CT, pro se.

Thandiwe Gray, New York County District Attorney, Maria Fernanda DeCastro, Rruhija Matai-Sanchez, New York City Law Department, New York, NY, Gregg Douglas Weinstock, Karolina Maria Wiaderna, Vigorito, Barker, Porter, & Patterson, LLP, Garden City, NY, for Defendants.

## REPORT AND RECOMMENDATION

Katharine H. Parker, United States Magistrate Judge

**\*1 To: The Honorable George B. Daniels, United States District Judge**

**From: Katharine H. Parker, United States Magistrate Judge**

Pro se Plaintiff Jeffery McKiver filed this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants the City of New York, police officers Thomas Gerding, Alberto Pingy, and George Garica, Assistant District Attorney Amanda Levy, and Plaintiff's former defense counsel Zwi Wasserstein, alleging various constitutional violations stemming from his criminal prosecution for drug and weapons-related crimes. Defendant Wasserstein has filed a Motion to Dismiss the Complaint as against him pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Doc. No. 26.) For the reasons set forth below, this Court recommends that the Motion to Dismiss be GRANTED.

## BACKGROUND

Plaintiff's claims arise out of his arrest at the Port Authority Bus Terminal (the "Port Authority") in New York on August 22, 2014 for possession of drugs and a weapon. Plaintiff asserts that while at the Port Authority, he was unlawfully searched by a police officer and then arrested without probable cause. (Doc. No. 1 ("Compl.") at 3, 8-10.) Though Plaintiff admits that he possessed a knife and marijuana at the time of the arrest, he claims there was no basis for the police to stop and search him and that the police made false statements about the circumstances surrounding his arrest. (Compl. at 8-10.) After the arrest, Plaintiff originally was indicted by the New York County District Attorney's Office. (Compl. at 10.) However, those charges were dismissed after Plaintiff was indicted in federal court based on the August 22, 2014 incident. (*Id.*) Plaintiff ultimately pled guilty to possession of a controlled substance with the intent to distribute [1] and was sentenced to 68 months imprisonment with 60 months of supervised release. (Compl. at 9.)

[1]    Defendant Levy has annexed to her motion to dismiss the transcript of Plaintiff's plea allocution. (Doc. No. 37 Ex. 7.) Although Plaintiff did not annex the plea allocution to his Complaint or allege the specific crime to which he pled guilty, the Court may consider the plea allocution because the Complaint incorporates Plaintiff's guilty plea by reference. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995).

Defendant Wasserstein, an attorney with the New York County Defender Services, was Plaintiff's court-assigned attorney for the criminal case pending in state court. (Compl. at 9.) Plaintiff alleges that he informed Defendant Wasserstein that he wanted to testify before the Grand Jury and be present when his indictment was issued. (Compl. at 12-13.) Plaintiff claims that Defendant Wasserstein ignored Plaintiff's wishes, advised him not to testify, and waived Plaintiff's right to testify without his consent. (Compl. at 12; Doc No. 25 ("Pl's. Opp.") at 5.) Plaintiff also alleges that the arresting officers fabricated evidence against him and that Defendant Wasserstein failed to investigate Plaintiff's claims of innocence and failed to seek surveillance video that would have corroborated Plaintiff's version of events and proven his innocence. (Compl. at 9-10, 11-13.) Plaintiff further asserts that Wasserstein failed to competently cross-examine the arresting officers, failed to properly consult

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 63 of 87

McKiver v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 3543906

with Plaintiff about entering a plea, failed to visit the scene of the crime, failed to object to certain conduct of the prosecutor, failed to obtain funds to hire an investigator, delayed filing a motion to suppress, and conspired with the state prosecutor and arresting officers. (Pl.'s Opp. at 5-7.) Based on all of the above, Plaintiff alleges that Defendant Wasserstein committed legal malpractice and provided ineffective assistance of counsel. (Pl.'s Opp. at 5, 20.)

**\*2** Prior to filing this action, Plaintiff filed a grievance against Defendant Wasserstein with the Disciplinary Committee of the New York Supreme Court, Appellate Division, First Department. (Compl. at 19.) On July 2, 2015, the Disciplinary Committee informed Plaintiff that it had completed its investigation of Plaintiff's complaint against Defendant Wasserstein and it found that Plaintiff's dissatisfaction did not amount to Defendant Wasserstein's professional misconduct. (Compl. at 19.)

## DISCUSSION

### I. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). To survive the motion, the Court must determine whether the complaint contains "sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id.* It must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). And, it must contain more than a "formulaic recitation of the elements of a cause of action." *Id.* As the U.S. Supreme Court explained in *Ashcroft v. Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The same standards apply to motions to dismiss complaints filed by pro se plaintiffs. *See Legeno v. Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009); *Jenkins v. N.Y.C. Dep't of Educ.*, No. 10-cv-6159 (BSJ) (THK), 2011 WL 5451711, at \*3 (S.D.N.Y. Nov. 9, 2011) (pro se status "does not ... excuse a plaintiff from compliance with the pleading standards of

the Federal Rules of Civil Procedure"). However, a pro se plaintiff's complaint must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpreted as raising the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). For this reason, courts will consider allegations made in a pro se plaintiff's submission in opposition to a motion to dismiss as supplementing the complaint's allegations, provided that such assertions are consistent with the allegations in the complaint. *See, e.g.*, *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012); *Flores v. N.Y.C. Human Res. Admin.*, No. 10-cv-2407 (RJH), 2011 WL 3611340, at \*1, n.1 (S.D.N.Y. Aug. 16, 2011).

Construing Plaintiff's Complaint and the allegations made in his opposition papers as raising the strongest arguments they suggest, the Complaint can be read as raising two claims against Defendant Wasserstein: (1) violation of Plaintiff's civil rights under of Section 1983 by providing ineffective assistance of counsel in his representation of Plaintiff in the underlying criminal matter and by conspiring with the police and prosecutor and (2) legal malpractice under New York common law. These claims are addressed in turn below.

### II. Section 1983 Claims

In order to state a cognizable claim under Section 1983, a plaintiff must allege that he has been deprived of a federally protected right by someone acting under the color of state law. 42 U.S.C. § 1983; *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). A "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to a defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.").

**\*3** Here, Defendant Wasserstein represented Plaintiff on behalf of the New York County Defender Services. Plaintiff alleges that Defendant Wasserstein rendered ineffective assistance of counsel because, among other reasons, he failed to competently cross-examine the arresting officers, failed to properly consult with Plaintiff about entering a plea, failed to visit the scene of the crime, failed to object to certain conduct of the prosecutor, failed to obtain funds to hire an investigator, and failed to order surveillance videos. These

allegations concern activities that are fall squarely within the traditional functions of counsel. *See Dodson*, 454 U.S. at 320, 325. Therefore, Defendant Wasserstein was not acting under color of state law, meaning that Plaintiff cannot state a claim for ineffective assistance of counsel under Section 1983. *See Jones v. New York City Police Dep't*, No. 09-cv-8105 (BSJ) (JCF), 2012 WL 1034919, at *1 (S.D.N.Y. Mar. 27, 2012) (adopting report and recommendation dismissing Section 1983 ineffective assistance of counsel claims against New York County Defender Services).

Though a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, a public defender may be held liable under Section 1983 for engaging in a conspiracy with officials acting under color of state law to deprive a person of a right secured by the Constitution. *Tower v. Glover*, 467 U.S. 914, 923 (1984);*Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999). In order to state a claim for conspiracy under Section 1983, the complaint must contain more than mere conclusory allegations. *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). A plaintiff must allege "details of time and place and the alleged effect of the conspiracy." *Id.* (internal quotation marks omitted). In addition, a plaintiff must plead facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end. *Warren*, 33 F. Supp. 2d at 177.

To the extent the Complaint here can be read to assert a conspiracy theory of liability, it fails to state a claim. Plaintiff's conspiracy allegation is asserted in the most conclusory fashion and is unsupported by facts that plausibly establish that Defendant Wasserstein entered into an agreement with the police or the prosecutor to charge and convict Plaintiff of the crime to which he pled guilty.

Accordingly, this Court recommends that the Section 1983 claims against Defendant Wasserstein be dismissed.

### III. Malpractice Claim

Plaintiff's malpractice claim against Defendant Wasserstein also fails as a matter of law. A legal malpractice claim in New York requires a plaintiff to demonstrate that the attorney breached the standard of care owed to his client, that the attorney's negligence was the proximate cause of

the loss sustained, and that the client has suffered actual and ascertainable damages as a result of the malpractice. *Dombrowski v. Bulson*, 19 N.Y.3d 347, 350 (2012). In the context of criminal defense representation, the client must establish that "the conviction was due to the attorney's actions alone and not due to some consequences of his guilt." *Britt v. Legal Aid Society*, 95 N.Y.2d 443, 447 (2000); *Carmel v. Lunney*, 70 N.Y.2d 169, 173-74 (1987). A plaintiff who has been convicted of a criminal offense must be able to assert his innocence or a colorable claim of innocence before he can pursue a claim against his attorney for legal malpractice arising out of the criminal proceeding. *Britt*, 95 N.Y.2d at 447. Thus, a plaintiff cannot assert a cognizable malpractice claim under New York law so long as his conviction stands. *See id.*; *see also D'Amato v. Bray*, 83 F. App'x 380, 381 (2d Cir. 2003).

In this case, Plaintiff admits that he possessed drugs and a knife when he was arrested and pled guilty to a charge stemming from this arrest. (Compl. at 8-9, 12-13.) Thus, Plaintiff fails to plead a colorable claim of innocence of the underlying offense. *Britt*, 95 N.Y.2d at 447. Nothing in Plaintiff's Complaint suggests that his conviction was overturned or will be overturned due to his innocence. Rather, because he pled guilty, this Court finds that Plaintiff's conviction was due to his admitted guilt—not Defendant Wasserstein's actions. The Court also notes that Plaintiff filed a grievance against his attorney, which was investigated by the Disciplinary Committee of the New York Supreme Court, Appellate Division, First Department. According to a document that Plaintiff annexed to his Complaint, the Disciplinary Committee found no evidence of attorney misconduct. (Compl. at 19.) Accordingly, the Court recommends that Plaintiff's legal malpractice claim be dismissed.

### CONCLUSION

**\*4** For the reasons set forth above, this Court respectfully recommends that Defendant Wasserstein's Motion to Dismiss be GRANTED and the claims against him be dismissed.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 3543906

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 65 of 87

McKiver v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 3543906

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 18-2369**<br>MCKIVER v. NYC PD MIDTOWN S MANHATTAN POL | — | C.A.2 | Aug. 10, 2018 | Docket |
| **2.  Docket 1:17-CV-04411**<br>McKiver v. NYC PD Midtown S Manhattan Police Department et al | — | S.D.N.Y. | June 12, 2017 | Docket |

**History (11)**

**Direct History (9)**

1. McKiver v. City of New York
   2018 WL 3543906 , S.D.N.Y. , Feb. 16, 2018

*Report and Recommendation Adopted by*

2. McKiver v. City of New York
   2018 WL 3628840 , S.D.N.Y. , July 23, 2018

*Appeal Dismissed by*

3. McKiver v. Gerding
   2019 WL 13397103 , 2nd Cir.(N.Y.) , Aug. 06, 2019

4. McKiver v. City of New York
   2018 WL 3543907 , S.D.N.Y. , May 16, 2018

*Report and Recommendation Adopted by*

5. McKiver v. City of New York
   2018 WL 3628840 , S.D.N.Y. , July 23, 2018

*Appeal Dismissed by*

6. McKiver v. Gerding
   2019 WL 13397103 , 2nd Cir.(N.Y.) , Aug. 06, 2019

7. McKiver v. City of New York
   2018 WL 3471814 , S.D.N.Y. , July 19, 2018

*Opinion Amended and Superseded by*

8. McKiver v. City of New York
   2018 WL 3628840 , S.D.N.Y. , July 23, 2018

*Appeal Dismissed by*

9. McKiver v. Gerding
2019 WL 13397103 , 2nd Cir.(N.Y.) , Aug. 06, 2019

**Related References (2)**
10. McKiver v. City of New York
2019 WL 7602171 , S.D.N.Y. , July 17, 2019

*Report and Recommendation Adopted by*

11. McKiver v. Gerding
2019 WL 4784658 , S.D.N.Y. , Oct. 01, 2019

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

2022 WL 956119
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

APPLIED ENERGETICS, INC.,
a Delaware Corporation, Plaintiff,

v.

GUSRAE KAPLAN NUSBAUM
PLLC, and Ryan Whalen, Defendants.

21cv382 (DF)
|
Signed 03/30/2022

**Attorneys and Law Firms**

Brendan M. Sheehan, Bond, Schoeneck & King, PLLC,
Syracuse, NY, for Plaintiff.

Mark Kenneth Anesh, Lewis, Brisbois, Bisgaard & Smith,
LLP, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

DEBRA FREEMAN, United States Magistrate Judge:

**\*1** In this legal malpractice case, which is before this
Court on consent of the parties pursuant to 28 U.S.C. §
636(c), plaintiff Applied Energetics, Inc. ("Plaintiff" or the
"Company") alleges that defendants Gusrae Kaplan Nusbaum
PLLC ("GKN") and Ryan Whalen, Esq. ("Whalen"), a partner
in GKN (collectively, "Defendants"): (1) engaged in acts
constituting legal malpractice, and (2) violated Rules 1.5, 1.7,
and 1.8 of the New York Rules of Professional Conduct (the
"NYRPC"), causing Plaintiff injury.

Currently before the Court is Defendants' motion to dismiss
Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure. For the reasons discussed below,
Defendants' motion (Dkt. 25) is granted in part and denied in
part.

**BACKGROUND**

**A. Factual Background**
Although Plaintiff's claims in this case arise out of
Defendants' representation of Plaintiff in early 2018 (*see*

Complaint and Jury Demand, dated Jan. 15, 2021 ("Compl.")
(Dkt. 1) ¶ 3), the claims are directly tied to Defendants' 2017
representation of Plaintiff's former principal executive officer
and sole director, George Farley ("Farley") (*see id.*), and the
Court will therefore summarize Plaintiff's pleaded allegations
regarding both representations.

In January 2017, Farley hired Defendants to represent him
individually "in a shareholder derivative lawsuit filed against
him in the Delaware Court of Chancery." (*See id.* (citing
*Superius Sec. Grp, Inc., v. Farley*, C.A. No. 2017-0024-
TMR)) (the "*Superius* Litigation".) In that suit, the plaintiff
shareholders alleged that Farley had breached his fiduciary
duties to Plaintiff by issuing 25 million shares, at a value of
$0.001 per share, to himself. (*Id.*) The shareholders eventually
voluntarily dismissed the suit without prejudice in July 2017.
(*Id.*; *see also id.* ¶ 17.)

In light of the dismissal, Farley was considered to have been
"successful on the merits" of the suit, such that he was entitled
to indemnification from the Company under Section 145(c)
(1) of the Delaware General Corporation Law ("DGCL"),
which states:

> To the extent that a present or
> former director or officer of a
> corporation has been successful on
> the merits or otherwise in defense
> of any action ... such person shall
> be indemnified against expenses
> (including attorneys' fees) actually and
> reasonably incurred by such person in
> connection therewith.

(Compl. Ex. I (E-mail from Whalen to Farley, dated Jan.
22, 2018 (Dkt. 1-9)); *see also* 8 Del. C. § 145; Compl.
¶ 18.) Plaintiff alleges that, "according to GKN, the fees
and expenses incurred in defending Farley in the Superius
Litigation [totaled] $33,324.26." (Compl. ¶ 19.) Plaintiff
also alleges, however, that, despite its asking Defendants
for "detailed billing statements showing the work and
hours spent," Defendants did not provide them, rendering
Plaintiff "unable to determine whether [the] claimed fees were
'reasonably incurred,' " as required for indemnification under
the DGCL. (*Id.* ¶¶ 19-20.)

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

Plaintiff further alleges that, in January 2018, "a different group of [the Company's] shareholders filed proxy solicitation materials with the Securities and Exchange Commission ("SEC") seeking to remove Farley as a director." (*Id.* ¶ 4.) According to Plaintiff, "[t]he proxy solicitation materials explained that shareholders ought to vote to remove Farley for cause *for the exact same conduct alleged in the Superius Litigation*." (*Id.* (emphasis in original).) Plaintiff alleges that Farley, "acting in his capacity as sole director and officer of [the Company], hired [Defendants] to represent [the Company] in connection with the proxy solicitation" on or around January 23, 2018. (*Id.* ¶¶ 4, 29.) Plaintiff asserts that the negotiations by which Farley retained Defendants to represent it occurred "exclusively" between Farley (purportedly acting on Plaintiff's behalf) and Defendants, and that "[n]o independent attorney representing [Plaintiff] was involved in th[o]se communications." (*Id.* ¶ 29.)

**\*2** At the time Defendants agreed to represent it in connection with the proxy solicitation, Defendants had allegedly still not received payment for their representation of Farley in the Superius Litigation. (*Id.* ¶ 6.) Critical to Plaintiff's claims here, Plaintiff alleges that, shortly after accepting the second representation, Defendants "negotiated with Farley to be paid in [Plaintiff's] stock in lieu of cash [both] for their fees incurred in defending Farley in the Superius Litigation," totaling $33,324.26 (fees for which, to the extent reasonable, the Company owed Farley indemnification), "*and* for fees incurred thus far in [Defendants'] representation of [Plaintiff] in the proxy solicitation matter," totaling another $5,200. (*Id.* (emphasis in original).) Plaintiff further alleges that Defendants and Farley agreed that, for the fees owed, Plaintiff would pay Defendants in stock "at a 50% discount to the then public trading price." (*Id.* ¶ 36.) Plaintiff alleges that, "at no time did [Defendants] disclose to [Plaintiff] the inherent conflict of interest of accepting an ownership interest in its corporate client [ ] in lieu of cash payment for fees, nor did [Defendants] advise [Plaintiff] in writing that seeking advice from independent counsel [was] desirable in such a transaction, nor did [Plaintiff] ever give its informed written consent to [Defendants'] role in the transaction." (*Id.* ¶ 37.)

Plaintiff alleges that, after the agreement was made to pay Defendants in stock, Farley emailed Stephen McCommon ("McCommon"), Plaintiff's then-accountant, to inform him of the agreement, and to request that McCommon prepare a letter of intent for the Company to issue the shares. (*Id.* ¶ 40.) Farley noted, in that email, that Mary O'Hara ("O'Hara") [1] would

issue the necessary opinion to the transfer agency, Continental Transfer & Trust Company ("Continental"). (*Id.*; *see also id.*, Ex. J (Email from Farley to McCommon, dated Jan. 23, 2018 (Dkt. 1-10)).) Plaintiff asserts, however, that O'Hara was "not involved in any of the negotiations." (Compl. ¶ 40.) Plaintiff also asserts that, in reaching the agreement to pay Defendants in stock, Farley and Defendants "necessarily agreed that 100% of [Defendants'] claimed fees defending Farley in the Superius Litigation were 'reasonably incurred' ... under [the] DGCL." (*Id.* ¶ 41.) Plaintiff additionally alleges that the agreement between Farley and Defendants to pay Defendants in Plaintiff's stock occurred "in the middle of a proxy contest whereby [Plaintiff's] shareholders were seeking to remove Farley as an [ ] officer and director," and, therefore, "both [Defendants] and Farley had incentives to maximize the amount of stock to be issued to [Defendants]: for [Defendants], to get the most shares at the least price per share; for Farley, to issue shares to friendly parties to potentially vote against the proxy contest and save Farley's job and control of [Plaintiff]." (*Id.* ¶ 43.) Plaintiff claims that "these incentives were directly contrary to [Plaintiff's] interests in ensuring only those fees 'reasonably incurred' were compensated and to get the best price per share of its stock." (*Id.*)

[1]    The Complaint fails to describe O'Hara's role in relation to Plaintiff, other than to allege that O'Hara "did not, nor was she asked to, fulfil[l] the role of independent counsel to [Plaintiff] ... when [Defendants] entered into a business transaction with a client." (Compl. ¶ 57.) Based on exhibits to the Complaint, O'Hara was, at the time, an attorney with the firm then known as Masur Griffitts+ ("MG+"). (*See* Compl., Exs. P (Dkt. 1-16), N (Dkt. 1-14), Q (Dkt. 1-17).) According to a February 5, 2018, Opinion Letter from MG+ to Continental, "regarding the issuance of 1,242,711 shares of the Company's common stock, par value $0.001 per share," MG + served, at the time, as "counsel to Applied Energetics, Inc." (*See* Compl. Ex. R (Opinion Letter from MG+, dated Feb. 5, 2018 ("Opinion Letter")) (Dkt. 1-18).) Based on a publicly available press release, it appears that, effective January 1, 2022, Plaintiff appointed O'Hara to serve as its General Counsel and Chief Legal Officer. *See* https://www.globenewswire.com/news-release/2022/01/12/2365875/0/en/Applied-Energetics-Announces-Appointment-of-General-

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 72 of 87

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

Counsel-and-Other-Corporate-
Developments.html.

In late January 2018, Farley apparently sent Henry Farrell
("Farrell"), an agent at Continental, a letter of intent for the
stock issuance. (*Id.* ¶ 49.) The letter, a copy of which is
attached to the Complaint (*see id.*, Ex. M (Letter of Intent,
dated Jan. 24, 2018 ("Letter of Intent")) (Dkt. 1-13, at ECF
2-3 [2] ), instructed Continental to issue 1,242,710 shares of
the Company's common stock, with 60% of those shares to be
issued to GKN, and 40% to be issued to Whalen (*see* Letter of
Intent), and, in a cover email, Farley mentioned that O'Hara's
opinion letter would follow (Compl., Ex. M (cover email))
(Dkt. 1-13, at ECF 1). In February 2018, O'Hara sent Farrell
an opinion letter regarding the issuance of shares (*id.*, Ex. R
("Opinion Letter") (Dkt. 1-18)), which expressed the opinion
that the shares had been "duly authorized, validly issued,
fully paid and non-assessable, as compensation for services
rendered by" Defendants (*id.* ¶ 54; *see also* Opinion Letter). [3]
Plaintiff alleges, though, that O'Hara's role in the issuance of
Plaintiff's shares to Defendants "was strictly to provide an
opinion of the legality of [Plaintiff's] issuance of shares from
a corporate power perspective," and that "[a]t no time did she
represent, explicitly or implicitly, that she was evaluating the
issuance of shares ... pursuant to the NYRPC [or] the fairness
of the transaction ..., or [that she was] providing any other
legal advice," (*Id.* ¶ 57.)

[2]     Page citations herein to "ECF___" are to the page
numbers affixed to the referenced document by the
Court's Electronic Case Filing ("ECF") system.

[3]     The Opinion Letter states that 1,242,711 shares
of Plaintiff's common stock were to be issued,
as opposed to the 1,242,710 shares mentioned
in Farley's letter of intent to Farrell. (*See* Letter
of Intent; Opinion Letter.) For the purposes of
Defendants' motion to dismiss, the Court will
take as true that the number of shares that were
eventually issued was 1,242,711, as stated in
Plaintiff's Complaint. (*See* Compl. ¶ 80.)

**\*3**  Plaintiff alleges that, in February 2018, Defendants
"assisted [Plaintiff] in preparing and filing an opposition to
the proxy solicitation materials in the form of an 8-K filed
with the SEC." (*Id.* ¶ 34; *see also id.*, Ex. E (Form 8-K,
dated Feb. 28, 2018 ("Form 8-K")) (Dkt. 1-5).) The Form
8-K, as described by Plaintiff in its Complaint, "defended
the propriety of Farley['s] [having] issuing himself [the] 25
million shares of stock." (*Id.* ¶ 34.) The document specifically

expressed the view that the proposals contained in the proxy
solicitation "would result in great harm to [Plaintiff] and its
shareholders." (Form 8-K.)

On March 1, 2018, while the proxy contest was going on (*see*
Compl. ¶ 62), Farley emailed Farrell to request the issuance
of Plaintiff's shares to Defendants (*id.* ¶ 58; *see also id.*, Ex.
S (email chain including email from Farley to Farrell, dated
Mar. 1, 2018) (Dkt. 1-19)). Farrell responded that Continental
would not be able to issue the shares before a wet-signed
opinion letter had been received. (Compl. ¶ 59; *see also id.*,
Ex. S (email from Farrell to Farley, dated Mar. 1, 2018,
stating: "We cannot [accept] an electronic signature[.]").)
Plaintiff alleges that Whalen then sent O'Hara an email on
March 5, 2018, "requesting that her firm send Farrell a signed
opinion letter as soon as possible," and "further express[ing]
his urge to complete the transaction quickly 'given the current
state of things.' " (Compl. ¶ 62; *id.*, Ex. U (Dkt. 1-21).)
According to Plaintiff, Defendants knew that "the current
state of things," as referenced by Whalen, was that the "proxy
contest was on the verge of success in obtaining enough
shareholder votes to remove Farley as [Plaintiff's] officer and
director." (*Id.*) Continental proceeded to issue the shares to
Defendants on March 8, 2018. (*Id.* ¶ 63.)

Plaintiff claims that, in agreeing to represent it in connection
with the proxy solicitation and in agreeing to accept Plaintiff's
stock as payment, Defendants "failed to comply with New
York[ ] Rules of Professional Conduct ("NYRPC")" 1.5, 1.7,
and 1.8. (*Id.* ¶¶ 5, 8.) In this regard, Plaintiff asserts that,
"[b]ecause of [Defendants'] former representation of Farley
in the Superius Litigation, and [Defendants'] continuing
duties to Farley under the NYRPC, there was a significant
risk that [Defendants'] professional judgment on behalf of
[Plaintiff] would be adversely affected." (*Id.* ¶ 31.) Further,
Plaintiff alleges that "at no time did [Defendants] disclose
to [Plaintiff], in writing, the conflict of interest presented by
its representation of Farley in the Superius Litigation and
subsequently representing [Plaintiff] in the proxy solicitation
concerning the very same conduct," and that "[a]t no time did
[Plaintiff] waive [Defendants'] conflict in writing." (*Id.*)

Plaintiff also alleges that Defendants' "conflict proved
materially harmful to [Plaintiff] and its shareholders." (*Id.*
¶ 32.) According to Plaintiff, had it "retained counsel in
connection with the proxy solicitation who did not owe
continuing duties of confidentiality and loyalty to Farley, [it]
would have had the benefit of unbiased and non-conflicted
counsel," and such counsel "would have concluded that

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

Farley likely did breach his fiduciary duties to [Plaintiff] by issuing himself 25 million shares of stock." (*Id.*) Plaintiff alleges that such an assessment would have "supported the shareholders['s] seeking to remove Farley for cause and, at a minimum, that ... [Plaintiff] should not take a position in connection with the proxy solicitation." (*Id.*) Not having had the benefit of non-conflicted counsel, Plaintiff alleges that, to its detriment, it took "a position opposing the proxy solicitation." (*Id.*) In doing so, it allegedly "spent many thousands of dollars, primarily in fees to [Defendants] ... [for] preparing and filing a form 8-K with the SEC urging [ ] shareholders to vote against the resolutions urged in the proxy solicitation." (*Id.*)

**\*4** Plaintiff further alleges that Defendants "knew [that] the circumstances under which they agreed to accept [Plaintiff's] stock via an agreement negotiated with Farley came in the middle of a shareholder proxy solicitation seeking to remove Farley," and that they knew the proxy contest "could succeed in resulting in Farley's removal and replacement with new management likely adverse to Farley." (*Id.* ¶ 38.) In fact, Plaintiff alleges that, on the same day as the stock was issued to Defendants, it received sufficient written consents of its shareholders to approve the stockholder proposals (*id.* ¶ 64), including the proposal to remove Farley from the Board of Directors, with cause (*id.*). Thomas Dearmin, who was approved to replace Farley as the Company's Chief Executive Officer, eventually terminated Defendants' services on March 11, 2018. (*Id.* ¶ 66; *see also id.*, Ex. V (Dkt. 1-22).)

Plaintiff additionally alleges that Defendants represented it in connection with the proxy contest, even though, if the contest were to succeed in ousting Farley, then Defendants' "ownership of [Plaintiff's] stock would [ ] conflict with [Plaintiff's] pursuit of claims against Farley." (*Id.* ¶ 38.) On this point, Plaintiff states that, in July of 2018, after Farley had been removed as director through the shareholder proxies, it proceeded to file a lawsuit against Farley in the Delaware Court of Chancery. (*Id.*) (citing Case No. 2018-0489 ("the Farley Litigation").) Over Plaintiff's objection, Defendants represented Farley in that action. (*Id.*) Plaintiff alleges that, although the Vice Chancellor denied Plaintiff's motion to disqualify Defendants as "untimely," she stated on the record, that, in denying the motion, she was making "no decision as to the merits of the claims," nor was she "declar[ing] that GKN ha[d] no conflict of interest." (*Id.*)

**B. Relevant Procedural History and Defendants' Motion to Dismiss**

### 1. **Plaintiff's Complaint**

Plaintiff filed its Complaint in this action on January 15, 2021, and pleaded two claims: (1) for legal malpractice (*see* Compl. ¶¶ 67-82 (First Cause of Action)); and (2) based on claimed violations of Rules 1.5, 1.7, and 1.8 of the NYRPC, for rescission of the stock issuance to Defendants, voiding of the stock transaction, and restitution or recoupment of legal fees paid to Defendants in an amount in excess of the reasonable amount due for services rendered (*see id.* ¶¶ 83-124 (Second Cause of Action)). On February 5, 2021, the parties consented to proceed before this Court for all purposes, pursuant to 28 U.S.C. § 636(c). (Dkt. 15.)

With respect to its first claim, Plaintiff alleges that, as its counsel, Defendants owed it a duty to exercise the reasonable competence and diligence commonly expected from attorneys, and also fiduciary duties to act with the utmost good faith, to avoid conflicts of interest, to advance Plaintiff's lawful objective, and to place Plaintiff's interest above its own. (*See* Compl. ¶¶ 69-74.) Plaintiff asserts that Defendants committed legal malpractice by breaching these duties, specifically by failing to disclose its conflicts of interest; by entering into the stock transaction without the Company's informed, written consent; by failing to advance Plaintiff's interests based upon independent judgment; and by advancing Farley's individual interests in opposing the proxy solicitation, over Plaintiff's contrary interests. (*See generally id.* ¶¶ 75-80.) Plaintiff contends that, as a "direct and proximate result" of these breaches of duty, Defendants "were issued a total of 1,242,711 of [the Company's] shares at below market value and caused other monetary harm to [Plaintiff]" (*id.* ¶ 80), and Plaintiff incurred legal expenses in seeking to rescind the shares issued to Defendants (*id.* ¶ 81). Further, Plaintiff contends that, due to their malpractice, Defendants are "not entitled to any fees for any services rendered to [Plaintiff]" (*id.* ¶ 82).

**\*5** With respect to its second claim, grounded in violations of the NYRPC, Plaintiff first asserts that Defendants violated NYRPC Rule 1.5, under which, as discussed further below (*see* Discussion, *infra*, at Section I(C)(1)), they generally had a duty "not to make an agreement for, charge, or collect an excessive fee" from Plaintiff for its legal services (Compl. ¶¶ 112-13). Plaintiff states that Defendants billed $33,324.26 in legal fees for its representation of Farley in the Superius Litigation, and $5,200 in legal fees for the work performed on the proxy solicitation matter, for a total of $38,524.26. (*Id.* ¶¶

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

115-16.) As payment for their services, Plaintiff alleges that Defendants accepted 1,242,711 shares of Plaintiff's stock that were supposedly issued to them at 50% of the stock's then-public trading price. (*Id.* ¶ 117.) Plaintiff maintains, though, that, "on March 8, 2018, the day of issuance, [Plaintiff's] stock opened and closed at $0.0752 per share," and, therefore, "the [market] value of [Plaintiff's] shares on the day of issuance of $93,451.86" (*id.* ¶ 118), thus suggesting that Defendants were given an even greater than 50% discount on the stock price.[4] In any event, Plaintiff claims that, in light of the stock's market value, the issuance to Defendants represented "an excessive fee for $38,524.26 worth of work." (*Id.* ¶ 119.) Plaintiff claims that Defendants "must return the excessive fee." (*Id.* ¶ 120.)

[4]  Although ultimately immaterial to its reasoning on the motion to dismiss, the Court notes that, if the legal fees at issue in fact totaled $38,524.26 at the date of the stock's issuance, then shares "purchased" at a 50% discount should have resulted in Defendants' being issued shares valued in the market, on that date, at $77,048.52 (*i.e.*, twice $38,524.26), rather than $93,451.86. In their reply memorandum, Defendants explain that the terms of the stock transaction were actually negotiated and accepted on January 22, 2018, prior to the date when the shares were eventually issued, and they further ask the Court to take judicial notice of the fact that the market share price as of January 22, 2018 was between $0.0625 and $0.0700 per share. (*See* Reply Memorandum of Law Submitted by Defendants Gusrae Kaplan Nusbaum PLLC and Ryan Whalen, Esq. in Support of Their Motion To Dismiss Plaintiff's Complaint, dated July 13, 2021 ("Def. Reply Mem.") (Dkt. 33), at 6 n.3 (citation omitted).) The Court notes that, at a per-share price of $0.0625, the value of 1,242,711 shares would have been $77,699.44, which is at least close to twice the value of the legal fees stated by Defendants as being owed to Defendants.

Plaintiff also asserts that Defendants violated NYRPC Rule 1.7, which, as discussed below (*see* Discussion *infra*, at Section I(C)(2)), limits the extent to which counsel may represent a client when counsel's interest are conflicted. Specifically, Plaintiff asserts that Defendants violated this rule by failing to "advise [Plaintiff] of their conflicts of interest in representing [it] in a situation where [its] interests were adverse to the interests of another client, Farley, to whom [Defendants] owed continuing duties of loyalty and

confidentiality under NYRPC 1.9." (Compl. ¶ 5.) Further, Plaintiff asserts that Defendants did not obtain its written consent to these conflicts and that, "even if Farley – acting as the sole officer, director, representative of AE – purported to give signed consent to [Defendants'] conflicts," his consent would have been ineffective as a conflict waiver "because Farley himself was conflicted." (*Id.*)

Plaintiff claims that Defendants additionally violated Rule 1.8, which, as discussed below (*see* Discussion, *infra*, at Section I(C)(3)), limits the circumstances in which an attorney may enter into business transactions with a client, when their interests are not aligned. Plaintiff asserts that Defendants violated this rule when they "negotiated with Farley to be paid in [Plaintiff's] stock in lieu of cash for the fees incurred" in the Superius Litigation and in connection with the proxy solicitation. (*Id.* ¶ 6.) According to Plaintiff, the "business transaction between [Plaintiff] and [Defendants] was not fair and reasonable to [Plaintiff]," and Defendants "did not disclose ... the conflicts of interest created by their negotiations and acceptance of [ ] stock as payment for services rendered." (*Id.* ¶¶ 102-04.) Plaintiff also asserts that Defendants did not advise it "in writing of the desirability of obtaining advice from independent counsel" and "did not obtain an independent valuation of the [ ] shares before accepting such shares." (*Id.* ¶¶ 105, 107.)

**\*6**  On its claims, Plaintiff seeks several types of relief, but principally damages for its claimed monetary losses and "rescission of the [stock] issuance [to Defendants] and return of all 1,242,711 shares issued to them." (Compl. at ECF 25 (Prayer For Relief).)

### 2. Defendants' Motion to Dismiss

Defendants filed their motion to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on May 28, 2021. (*See* Defendants GKN and Whalen's Notice of Motion to Dismiss the Complaint, dated May 28, 2021 (Dkt. 25).) In support of their motion to dismiss, the Defendants also filed a memorandum of law (Defendants GKN and Whalen's Memorandum of Law in Support re: Motion to Dismiss the Complaint, dated May 28, 2021 ("Def. Mem.") (Dkt. 26)) and an attorney declaration (*see* Declaration of Mark K. Anesh, Esq., in Support re: Defendants GKN and Whalen's Motion to Dismiss the Complaint, dated May 28, 2021 ("Anesh Decl.") (Dkt. 27)).

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 75 of 87

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

### a. Defendants' Arguments

In their motion, Defendants argue that Plaintiff's malpractice claim should be dismissed because "the Complaint fails to allege[ ] facts sufficient to establish the elements of proximate cause or damages." (Def. Mem., at 12.) In particular, Defendants argue that, because they did not represent Plaintiff in the Superius Litigation, Plaintiff "was not in privity of contract with the [ ] Defendants for the Superius Litigation and therefore cannot sue for malpractice related to that representation." (*Id.*, at 13.) On this point, Defendants maintain that Plaintiff has "utterly failed to show how a subsequent alleged conflict (arising from the Proxy Solicitation) could proximately cause [ ] damages in the amount of legal fees already incurred (for the Superius Litigation), when no alleged conflict of interest existed during the Superius Litigation." (*Id.*) Defendants also point out that "the proxy solicitation was ultimately successful," and argue that this "effectively precludes [Plaintiff] from being able to argue that the [ ] Defendants' efforts in response to the same caused any harm to [Plaintiff]." (*Id.*, at 14.) Defendants also assert that Plaintiff had "retained independent counsel to offer an opinion on the reasonableness of the shares of stock offered as compensation" – presumably referring to O'Hara – and that "this cuts off any proximate cause from any actions of the [ ] Defendants in accepting the issuance of such shares." (*Id.*) Further, with respect to their receipt of stock during the proxy contest, Defendants argue that, as they "did not receive their shares until March 8, 2018, the same day that [Plaintiff] received the written consents from the shareholders and the proposals went into effect[,] ... the issuance of these shares had no effect on the likelihood of the proposals being adopted." (*Id.*)

Defendants also argue that they did not violate the NYRPC rules that Plaintiff cites. As to Rule 1.5, they contend that their fees were reasonable and that O'Hara, acting as "independent counsel," reviewed the issuance of the shares and "authored an opinion letter approving the issuance." (*Id.*, at 14-15.)

As to Rule 1.7, Defendants argue that the "Complaint does not allege that ... Defendants represented 'differing interests' because there was no simultaneous representation," and further argue that "the Complaint has failed to allege that there was significant risk that ... Defendants' representation of [Plaintiff] would be adversely affected by their personal or business interests, including any continuing duties owed to Farley." (*Id.*, at 16-17.) Defendants emphasize the fact that

"the Superius Litigation ended by voluntary dismissal on July 24, 2017, whereas the proxy solicitation did not begin until on or around January 18, 2018." (*Id.*, at 17.)

**\*7** As to Rule 1.8, Defendants argue that Plaintiff fails to state a claim because MG+, "acting as [Plaintiff's] independent, outside legal counsel ... consented to the issuance [of the shares to Defendants]." (*Id.*, at 19.) Defendants also contend that Plaintiff's allegation that the price of the shares was unreasonable is inconsistent with the statements Farley made to McCommon in an email, in which he described "the issuance of shares at a 50% discount as 'the [same] discount given to John Shultz and his clients.' " [5] (*Id.* (citing Anesh Decl., Ex. 4).) Defendants further maintain that, even if Plaintiff had not provided "informed, written consent" to the issuance of the stock to them, Plaintiff would still not be entitled to relief for an alleged violation of Rule 1.8 because "[Plaintiff's] new management (appointed pursuant to the Proxy Solicitation proposals), independently ratified the issuance of this stock by making numerous filings with the SEC, including [a] Form 10-K for year ending in 2017 ..., which states '[o]n January 24, 2018, we issued 1,242,710 shares of common stock in settlement of invoices valued at $38,524,26 with a vendor [GKN].' " (*Id.* (citing Anesh Decl., Ex. 11).)

[5]       Defendants note that "John Shultz was one of the individuals who initiated the Proxy Solicitations and eventually became a member of the Board after new management took over in 2018." (*Id.*, at 4 n.6.)

Finally, Defendants assert that Plaintiff's claim for "rescission and restitution/recoupment [as pleaded under the NYRPC] must be dismissed" because "there is no private right of action for a violation of the Rules of Professional Conduct" and because it is "duplicative of the legal malpractice claim." (*Id.*, at 20-21.)

### b. Plaintiff's Arguments in Opposition

Plaintiff filed an opposition to Defendants' motion on June 25, 2021. (*See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated June 25, 2021 ("Pl. Mem.") (Dkt. 30).) In its opposition, Plaintiff asserts that both its legal malpractice claim and its claim alleging violations of Rules 1.5, 1.7, and 1.8 of the NYRPC are adequately pleaded. (*See generally id.*)

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

With respect to its malpractice claim, Plaintiff states that it has not attempted to claim that it was in "privity of contract" with Defendants for the Superius Litigation, but, rather, that Defendants entered into a "shares for fees" agreement with Plaintiff, including for fees incurred from the Superius Litigation, "*after* Defendants began formally representing [Plaintiff]." (*Id.*, at 8 (emphasis in original).) Plaintiff maintains that the right of indemnity for the Superius Litigation "belonged to Farley, not Defendants, and as such, Farley was adverse to [Plaintiff] in negotiating what fees he had 'reasonably incurred.' " (*Id.*, at 8-9.) Further, Plaintiff argues, "Defendants could not adequately represent [Plaintiff's] interests in negotiating the amount of their claimed unpaid fees, or the propriety of a 'shares for fees' transaction, because Defendants were the direct beneficiaries of Farley's indemnity rights," and, therefore, "both parties to the negotiations (Defendants and Farley) had an incentive to pay all 100% of the remaining balance allegedly owed." (*Id.*, at 9.)

Plaintiff next maintains that the "business transaction between [Plaintiff] and Defendants was not fair and reasonable to [Plaintiff] and [its] shareholders in that ... Defendants were issued shares of [ ] stock at a 50% discount to the public trading price without any independent valuation by a non-conflicted person." (*Id.*) Plaintiff asserts that Defendants negotiated this agreement knowing that Farley, their former client, had "personal incentives directly contrary to [Plaintiff's] interests, to maximize the amount of [ ] shares issued to those friendly to Farley and expected to vote against the resolutions proposed to remove Farley." (*Id.*) Plaintiff further asserts that the Complaint sufficiently alleges proximate cause and damages, in that Defendants received shares at a discount, that the shares had a valuation of $93,451.86 in exchange for only $38,524.26 of work, that Plaintiff had to "incur substantial legal expenses" to attempt to rescind the shares, and that Defendants "charged [Plaintiff] (and were compensated) for opposing a proxy solicitation alleging Farley's misconduct, when [Plaintiff] should have supported the challenge ... or, at a minimum, not taken any position." (*Id.*, at 12.)

**\*8**  Turning to its claims under the NYRPC, Plaintiff contends that, under Rule 1.5, the question of whether a fee is excessive is a "question of fact, and cannot be determined on a motion to dismiss." (*Id.*, at 14 (citing *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381 (S.D.N.Y. 2004), *amended on reconsideration on other grounds*, No. 03cv6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004)).)

Plaintiff next maintains that Rule 1.7's "conflict waiver requirement includes conflicts with former clients" and that, therefore, "Defendants could not adequately exercise professional judgment in representing [it] ... in the proxy solicitation, because [Defendants'] duties to ... Farley[ ] precluded Defendants from taking any position adverse to Farley." (*Id.*, at 16.)

Lastly, with regard to Rule 1.8, Plaintiff emphasizes its allegations that Defendants did not advise it in writing "of the desirability of seeking the advice of independent counsel, [ ] negotiated all terms of the 'shares for fees' transaction without providing [Plaintiff] an opportunity to obtain such independent advice," and "did not obtain the written informed consent of [Plaintiff] ... as to the essential terms of the transaction and Defendants' role in the transaction." (*Id.*, at 20.) Challenging Defendants' contention that O'Hara's opinion letter somehow relieved Defendants of the need to comply with both Rules 1.7 and 1.8, Plaintiff highlights that O'Hara's letter was "addressed to [Plaintiff's] transfer agent, not [Plaintiff's] management, [and] did not amount to the client's informed consent to the conflict of interest or the business transaction." (*Id.*) Plaintiff also asserts that O'Hara "was not asked to, nor did she purport to, represent [Plaintiff] in the shares-for-fees transaction" (*id.*, at 21), and that "the purpose of an opinion letter to a stock transfer agent is [merely] to confirm the corporation has complied with the requirements of 8 Del. C. §§ 151-154 in the issuance of stock – *e.g.*, board approval in conformity with the certificate of incorporation." (*id.*, n.4).

Apart from arguing that its allegations are sufficient to support both its legal-malpractice and NYRPC claims, Plaintiff argues that those claims are not duplicative. (*See id.*, at 23-24.) On this point, Plaintiff argues that the remedies sought on the two types of claims are distinct, as, on its malpractice claims, it seeks money damages, whereas on its claim under the NYRPC, it seeks rescission of the transaction by which Defendants were paid for their services in stock, and return of the shares issued to Defendants in that transaction. (*Id.*, at 24.) Plaintiff contends that its ability to maintain a claim for rescission based solely on the asserted NYRPC violations is supported by case law. (*See id.*, at 23 (citing *Seippel*, 341 F. Supp. 2d at 380).)

**c. Defendants' Reply**

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

Defendants filed a reply on July 13, 2021, largely reiterating their opening arguments as to why, in their view, Plaintiff has failed to state a claim for legal malpractice. (*See generally* Def. Reply Mem. (Dkt. 33), at 4-15.) In addition, Defendants challenge Plaintiff's reading of the law with respect to the availability of a private right of action for NYRPC violations, contending that Plaintiff has particularly misrepresented the holding of *Seippel*. (*Id.*, at 15-17.)

**DISCUSSION**

**I. APPLICABLE LEGAL STANDARDS**

 **\*9**  Neither Plaintiff nor Defendants raise the issue of which state's substantive law applies to this case. (*See generally* Def. Mem.; Pl. Mem.) "Where, as here, the parties do not raise choice-of-law as an issue, 'it can be said that they have consented to the application of the forum state's law.' " *Scharnikow v. Siracuse*, No. 15cv6991 (DRH) (SIL), 2016 WL 7480360, at \*3 (E.D.N.Y. Dec. 6, 2016), *report and recommendation adopted*, 2016 WL 7480364 (Dec. 29, 2016) (citing *Mangual v. Pleas*, No. 02cv8311 (CBM), 2005 WL 2179083, at \*2, n.1 (S.D.N.Y. Sept. 8, 2005)). Accordingly, this Court will apply New York law.

 **A. Rule 12(b)(6)**

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). In deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff's claim, as pleaded, is sufficient to afford him or her the opportunity to proceed on the evidence. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

Thus, the court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby,*

*McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal alteration and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (internal alteration omitted) (quoting *Iqbal*, 556 U.S. at 678).

In general, on a motion to dismiss, a court must limit its consideration to: "(1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *See Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court," then "the motion must be treated as one for summary judgment under Rule 56[,] [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

 **B. Legal Malpractice**

 **\*10**  Whether a pleading is sufficient to state "a cause of action for legal malpractice pose[s] a question of law which [can] be determined on a motion to dismiss." *Achtman*, 464 F.3d at 337 (citing *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985)). To state a claim for legal malpractice, a plaintiff must allege "1) an attorney-client relationship, and 2) attorney negligence, 3) which is the proximate cause of, 4) actual damages." *Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP*, No. 19cv1232 (AJN), 2020 WL 2833686, at \*2 (S.D.N.Y. May 31, 2020) (citing *Achtman* 464 F.3d at 337).

As to attorney negligence, a plaintiff must establish that the defendant attorney "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession ...." *AmBase Corp. v. Davis Polk & Wardwell*, 8 N.Y.3d 428, 434 (2007); *accord L. Prac. Mgmt. Consultants, LLC v. M & A Couns. & Fiduciaries, LLC*, 599 F. Supp. 2d 355, 359 (E.D.N.Y. 2009); *Katsoris v. Bodnar*

*& Milone, LLP*, 186 A.D.3d 1504, 1505 (2d Dep't 2020). An attorney, however, "is not held to the rule of infallibility and is not liable for an honest mistake of judgment, where the proper course is open to reasonable doubt." *Bernstein v. Oppenheim & Co., P.C.*, 160 A.D.2d 428, 489 (1st Dep't 1990) (citing *Grago v. Robertson*, 49 A.D.2d 645, 646 (3d Dep't 1975)). For this reason, "selection of one among several reasonable courses of action does not constitute malpractice." *Id.* (quoting *Rosner*, 65 N.Y.2d at 738).

As to causation, a plaintiff "must plausibly allege that, but for the malpractice, the plaintiff would have received a more advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018) (citing *Schwartz v. Olshan Grundman Frome & Rosenzweig*, 302 A.D.2d 193, 198 (1st Dep't 2003)). In response to a Rule 12(b) motion, the plaintiff need not establish causation, but only point to allegations from which proximate cause may be plausibly inferred. *See Even Street Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008) ("At this early stage of the litigation, [ ] Plaintiff need only allege, not prove, the proximate cause element of the legal malpractice claim.").

With regard to the element of actual damages, once again Rule 12(b)(6) looks only to the plaintiff's allegations and does not require proof. Nonetheless, "[c]onclusory allegations of damages or injuries predicated on speculation cannot suffice for a malpractice action, and dismissal is warranted where the allegations in the complaint are merely conclusory and speculative." *Katsoris*, 186 A.D.3d at 1506 (quoting *Bua v. Purcell & Ingrao, P.C.*, 99 A.D.3d 843, 848 (2d Dep't 2012)).

### C. NYRPC

Although the legal profession is largely "self-governing," "[e]very lawyer is responsible for observance of the Rules of Professional Conduct and also should aid in securing their observance by other lawyers." NYRPC Preamble. Still, "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." *Id.*; *see also Cohen v. Kachroo*, 115 A.D.3d 512, 513 (1st Dep't 2014) ("To the extent that plaintiff seeks to allege malpractice based on a violation of the New York Rules of Professional Conduct, such an alleged violation not, without more, support a malpractice claim.") (citing *Schafrann v. N.V. Famka, Inc.*, 14 A.D.3d 363, 364 (1st Dep't 2005)).

**\*11** Nonetheless, while a violation of a disciplinary rule "does not *in and of itself* amount to actionable negligence on the part of an attorney ... liability can follow where the client can show that he or she suffered actual damage as a result of the violation." *Applied Energetics*, 2020 WL 2833686, at \*3 (emphasis in original) (quoting *Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13cv4348 (JMF), 2014 WL 3439620, at \*5 (S.D.N.Y. July 15, 2014)). In other words, where proximate cause and actual damages can be shown to have flowed from a rule violation (including violation of a conflict-of-interest rule), the violation may support a legal malpractice claim. *See id.*; *see also Pillard v. Goodman*, 918 N.Y.S.2d 461, 462 (1st Dep't 2011) ("While [ ] allegations of a conflict of interest or a violation of attorney disciplinary rules alone could not support a cause of action, liability can follow where the divided loyalty results in malpractice." (citations omitted)); *Tabner v. Drake*, 780 N.Y.S.2d 85, 89 (3d Dep't 2004) ("Although ... a violation of a disciplinary rule does not in and of itself amount to actionable negligence on the part of an attorney ..., liability can follow where the client can show that he or she suffered actual damage a result of the conflict." (citations omitted)).

Separately, even without proof of the elements of a malpractice claim, a violation of a rule prohibiting an attorney from entering into an agreement for excessive fees may entitle a client to the equitable remedies of rescission of the fee agreement and restitution or recoupment of the fees paid under that agreement. *See Seippel*, 341 F. Supp. 2d at 380 (holding that a claim for rescission of an excessive fee agreement and restitution of fees, based on the invalidity or unenforceability of the agreement under New York and Virginia rules of professional conduct, was "distinct from the [plaintiff's] malpractice claim, as it [did] not require any finding of malpractice on the part of the [attorney defendants]," and denying motion to dismiss the rescission/ restitution claim).

### 1. Rule 1.5

Rule 1.5 of the NYRPC provides that "[a] lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense." NYRPC Rule 1.5(a). Multiple factors are to be considered in determining whether a fee is excessive, including:

Case 6:25-cv-01495-MAD-MJK    Document 9    Filed 12/17/25    Page 79 of 87

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Id.* The rule also provides that a lawyer shall "communicate to a client the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible." NYRPC Rule 1.5(b).

As noted above, a violation of this rule may entitle the client to rescission of the prohibited fee agreement, and the restitution or recoupment of fees paid under that agreement. *See Seippel*, 341 F. Supp. 2d at 380.

### 2. **Rule 1.7**

Rule 1.7 of the NYRPC provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude that either":

(1) the representation will involve the lawyer in representing differing interests; or

(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

NYRPC Rule 1.7(a). Under this rule, however, a lawyer may still represent a client despite the "existence of a concurrent conflict of interest" if:

**\*12**  (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

NYRPC Rule 1.7(b). Although Rule 1.7 of the NYRPC mentions "concurrent" conflicts of interest, Comment 1 to the rule indicates that "[c]oncurrent conflicts of interest, which can impair a lawyer's professional judgment, can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests." NYRPC Rule 1.7, cmt. 1.

### 3. **Rule 1.8**

Rule 1.8(a) of the NYRPC provides that a "lawyer shall not enter into a business transaction with a client if they have different interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless":

(1) the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

NYRPC Rule 1.8(a). These requirements must ordinarily be met when "a lawyer agrees to take stock (or stock options) in the client in lieu of cash fees." *Applied Energetics, Inc.*, 2020 WL 2833686, at *3 (quoting NYRPC Rule 1.8, cmt. 4D).

## II. DEFENDANTS' MOTION TO DISMISS

### A. Plaintiff Has Adequately Pleaded a Claim For Legal Malpractice.

As set out above, to state a viable claim for legal malpractice under New York law, a plaintiff must allege: "1) an attorney-client relationship, and 2) attorney negligence, 3) which is the proximate cause of, 4) actual damages." *Applied Energetics*, 2020 WL 2833686, at *2 (citing *Achtman* 464 F.3d at 337). As to the first of these elements – the existence of an attorney-client relationship – Plaintiff plainly alleges that Defendants were retained to represent it "on or about January 19, 2018" (Compl. ¶ 68), and Defendants do not appear to challenge that allegation (*see* Def. Mem., at 2). Defendants argue, however, that Plaintiff's legal-malpractice claim should be dismissed "because the facts alleged do not support a violation of the New York Rules of Professional Conduct, or other deviation from the standard of care giving rise to liability." (Def. Mem. at 14-15.) Upon review the totality of Plaintiff's allegations, the Court rejects this argument, and concludes that the Complaint does state a claim for legal malpractice.

### 1. Plaintiff Has Adequately Alleged Attorney Negligence.

**\*13** With respect to the second element – attorney negligence – Plaintiff must plead that Defendants "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *AmBase*, 8 N.Y.3d at 434. Plaintiff has pleaded this in a number of ways, principally related to Defendants' having acted – both in representing Plaintiff in connection with the proxy solicitation and in negotiating their agreement to be paid for their services in stock – from a conflicted position, allegedly in violation of NYRPC Rules 1.7 and 1.8, respectively.

With respect to the conflict inherent in Defendants' representing and advising Plaintiff in the proxy contest, Plaintiff's opposition summarizes the allegations of the Complaint as "specif[ying] in detail how Defendants' purported representation of [Plaintiff] actually amounted to

representing Farley's individual interests in direct opposition to [Plaintiff]'s interests, by [*,inter alia,*] assisting [Plaintiff] (at Farley's direction) to oppose a proxy solicitation seeking Farley's removal for malfeasance, while disparaging the claims of the proxy soliciting shareholders as 'meritless.' " (Pl. Mem., at 1.) According to Plaintiff, "Defendants could not adequately exercise professional judgment in representing [Plaintiff] in addressing the allegations against Farley in the proxy solicitation, because Defendants' duties to its former client, Farley, precluded Defendants from taking any position adverse to Farley." (*Id.* at 16; *see, e.g.*, Compl. ¶ 75 (alleging that, "due to their past representation of Farley in the Superious Litigation," Defendants "did not advance [Plaintiff's] interests [in the later proxy contest] based on their own independent judgment, but [rather] advanced Farley's individual interests in opposing the proxy solicitation").) Plaintiff alleges that a "reasonable lawyer" would have concluded that taking on this representation of Plaintiff would "pose[ ] a significant risk that the lawyer's professional judgment on behalf of [the Company] would be adversely affected by the lawyer's responsibilities to Farley, a former client." (Compl. ¶ 89; *see* NYRPC Rule 1.7 (proscribing client representation "if a reasonable lawyer would conclude" either that it would "involve the lawyer in representing differing interests" or would pose a "significant risk that the lawyer's professional judgement on behalf of a client [would] be adversely affected by the lawyer's own ... interests").)

In addition, Plaintiff maintains that Defendants failed to "disclose this conflict to [Plaintiff] in writing, and [Plaintiff] never waived this conflict in writing." (Pl. Mem., at 16; Compl. ¶ 92.) Plaintiff further contends that, "even if it had been expressly disclosed *to Farley* and purportedly waived in writing *by Farley*, no representative of [Plaintiff] was sufficiently disinterested in the conflict to consent thereto." (Pl. Mem., at 16 (emphasis in original) (citing *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1189 (N.D. Cal. 1993)); *see* Compl. ¶ 79(c) (alleging that the conflict of interest could not have been "cured by consent because Farley, as the sole director of [the Company] and the one charged with having an adverse interest, was unable to provide adequate consent").)

Although Defendants argue that their purportedly "limited representation" of the Company in connection with the proxy contest, and "their decision to provide [Plaintiff] feedback on its proposed Form 8-K response" were "not motivated by supposed conflicted duties to a former client, but rather, by an entirely reasonable conclusion that the allegations [in the proxy solicitation] themselves were weak" (Def. Mem. at 18),

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956019

the Court finds that it is certainly plausible that a reasonable lawyer would have concluded that, once Defendants had represented Farley in shareholder derivative suit in which he was accused of breaching his fiduciary duties to the Company by issuing himself 25 million shares of Company stock for par value (Compl. ¶ 3), Defendants' independent judgment would have been impaired in then representing the Company in connection with a proxy solicitation in which the soliciting shareholders were making the exact same allegations against Farley, and were seeking to remove him from office based on those allegations (*id.* ¶ 4).

**\*14** Plaintiff pleads that "[h]ad [Plaintiff] retained counsel in connection with the proxy solicitation who did not owe continuing duties of confidentiality and loyalty to Farley, [Plaintiff] would have had the benefit of unbiased and non-conflicted counsel to investigate and analyze the allegations made against Farley in the proxy solicitation materials," and that non-conflicted counsel "would have concluded that Farley likely did breach his fiduciary duties to Plaintiff." [6] (*Id.* ¶ 32.) Instead, Plaintiff alleges that, with Defendants acting as its counsel, it "t[ook] a position opposing the proxy solicitation" and incurred attorneys' fees for Defendants' "substantial[ ] and material[ ] assist[ance]" in "preparing and filing a Form 8-K with the SEC urging [Plaintiff's] shareholders to vote against the resolutions urged in the proxy solicitation." (*Id.* ¶¶ 25, 32; *see* Form 8-K).

[6]     In support of this allegation, Plaintiff references the fact that, in a suit that it later brought against Farley, *Applied Energetics, Inc. v. Farley*, C.A. No. 2018-0489-TMR, 2019 WL 334426, at \*1 (Del. Ch. Jan. 24, 2019), the court granted its request for a preliminary injunction to prevent Farley from selling the 25 million shares that he had issued to himself, finding that the Company had "met its burden to show a reasonable probability of success on the merits in its claim against Farley for breach of the fiduciary duty of loyalty," *id.* at \*9; *see* Compl. ¶ 32.

Defendants argue in their motion that, even if their representation of Plaintiff in connection with the proxy solicitation was conflicted under NYRPC Rule 1.7, the Court should nonetheless recognize that "Rule 1.7(b) permits representation ... if the lawyer reasonably believes he or she will be able to provide competent and diligent representation to the client and the client gives informed consent in writing" (Def. Mem., at 18), and that "[a]dvance

waiver of potential conflicts of interest need not be in writing if informed consent can be found under the circumstances" (*id.*). Defendants then seem to suggest that the opinion letter provided by O'Hara (described by Defendants as Plaintiff's "independent counsel") sufficed to demonstrate Plaintiff's informed consent to the representation. (*See id.*) This argument regarding implied "consent," however, like Defendants' contention that they had a reasonable belief that they could provide Plaintiff with competent representation, merely raises issues of fact, and does not affect the adequacy of Plaintiff's pleading. As held in *Flycell, Inc. v. Schlossberg LLC*, No. 11cv0915 (CM), 2011 WL 5130159 (S.D.N.Y. Oct. 28, 2011), "[w]hether or not Defendants could reasonably have thought [their] conflicts would not affect their representation of Plaintiff, the[ ] conflicts were never disclosed, and therefore Plaintiff has adequately alleged a conflict of interest," *id.* at \*5.

On the element of negligence, Plaintiff additionally pleads that Defendants' separate alleged conflict – in the transaction by which it agreed to accept shares of Company stock in lieu of monetary payment for their services – violated NYRPC Rule 1.8, which, as set out above, prohibits an attorney from "enter[ing] into a business transaction with a client if they have different interests therein and if the lawyer expects the lawyer to exercise professional judgment therein for the protection of the client," absent full disclosure and written informed consent. NYRPC Rule 1.8. A Comment to that rule makes clear that it generally applies to transactions in which "the lawyer accepts an interest in the client's business ... as payment of all or party of the lawyer's fee." *Id.* cmt. 4D.

Here, Plaintiff alleges that, without its informed consent, Defendants improperly engaged in a transaction with Farley by which Defendants agreed to be paid in stock, in lieu of cash, both "for the fees incurred in defending Farley in the Superius Litigation and for fees incurred [as of that point] in their representation of [Plaintiff] in the proxy solicitation matter." (Compl. ¶ 6 (emphasis in original); *see also id.* ¶ 7 (alleging that "at no time did [Defendants] advise [Plaintiff] in writing to seek independent counsel in reviewing the propriety of the stock issuance [or] advise [Plaintiff] of the several conflicts of interest such stock ownership would create," and that "[Plaintiff's] consent was not obtained to waive such conflicts"); *see also id.* ¶¶ 79(h)-(j).) Plaintiff also alleges that, in connection with the shares-for-fees transaction, Defendants did not "obtain an independent valuation of the [Company's] shares before

Case 6:25-cv-01495-MAD-MJK     Document 9     Filed 12/17/25     Page 82 of 87

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

accepting [them] at half the public trading price at the time of the agreement." (*Id.* ¶ 79(g).)

**\*15** Perhaps most significantly, Plaintiff alleges that Defendants negotiated this payment agreement with Farley "*in the middle of a proxy contest* whereby [the Company's] shareholders were seeking to remove Farley as a [Company] officer and director." (*Id.* ¶ 43 (emphasis added).) Of course, the ownership of Company shares would have afforded Defendants the right to take a position in the proxy contest. As argued by Plaintiff in opposition to Defendants' motion, Defendants allegedly negotiated the fee agreement

> knowing that Farley – their former client in the Superius Litigation – had personal incentives, directly contrary to [Plaintiff]'s interests, to maximize the amount of [Plaintiff's] shares issued to those friendly to Farley and expected to vote against the resolutions proposed to remove Farley in the proxy solicitation – even if that meant diluting the value of [Plaintiff]'s stock by issuing new shares at a dramatic discount to their public trading price.

(*Id.*, at 9.)

Some of the precise issues raised by Defendants' motion were addressed in *Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP*, a case which again involved conduct by Farley, purportedly acting on behalf of Plaintiff, although in a transaction with a different law firm. *See generally Applied Energetics, Inc.*, 2020 WL 2833686. There, Farley signed a retainer agreement with the firm of Stein Riso Mantel McDonough, LLP ("Stein Riso"). *Id.* at \*1. Under that agreement, Stein Riso was to provide legal services to Plaintiff for "general business and tax matters" and "such other matters" as the Company might refer to the firm "from time to time." *Id.* Plaintiff alleged that, after that retainer agreement was executed, "Farley, on behalf of [Plaintiff], negotiated with Stein Riso to pay for \$5,000 of Stein Riso's legal services via stock in [the Company]." *Id.* Stein Riso allegedly "represented [Plaintiff] in preparing the Common Stock Subscription Agreement ["Subscription Agreement"] pursuant to which the firm would subscribe to purchase shares

of [the Company's] common stock at [\$0.001] per share." *Id.* At the time the Subscription Agreement was being prepared, the Company's stock was trading publicly at approximately \$0.004 per share. *See id.* Prior to finalizing the Subscription Agreement, however, Plaintiff – which had been a shell company – publicly disclosed plans to restart its business activities and, four days after that disclosure (made in a Form 10-K filed with the SEC), its stock closed 10 times higher – at \$0.04 per share. *Id.* at \*1-2. Nonetheless, Stein Riso allegedly proceeded to execute the Subscription Agreement for 10 million Company shares at \$0.001 per share. *Id.* at \*1.

In finding, in that case, that Plaintiff's allegations "sufficiently allege[d] a violation of Rule 1.8 [of the NYRPC]," the court highlighted that Stein Riso (1) "negotiated with Farley to receive payment for some of its legal services via [Company] stock," and Stein Riso "represented [the Company] in preparing the ... Subscription Agreement by which *it* would purchase shares of common stock from [the Company]"; (2) "did not at any point advise [the Company] to consult independent legal counsel to review the [transaction] and neither sought nor obtained a written waiver of this potential conflict from [the Company]"; (3) "did not investigate whether its purchase of [Company] shares at \$[0.001] was fair to [the Company] and its shareholders"; and (4) "did not engage the services of an investment professional to value [the Company's] shares, and it knew that Farley had not obtained any such independent advice." *Id.* at \*3.

**\*16** Similarly, Plaintiff has alleged in this case that Defendants: (1) negotiated with Farley to receive payment for their legal services in Plaintiff's stock (Compl. ¶¶ 36, 40); (2) did not advise Plaintiff to consult independent legal counsel to review the transaction and neither sought nor obtained a written waiver of this potential conflict from Plaintiff (*id.* ¶¶ 33, 37, 77); (3) did not investigate whether its purchase of Plaintiff's shares was fair to Plaintiff and its shareholders (*id.* ¶ 79(f)); and (4) did not engage the services of an investment professional to value Plaintiff's shares (*id.* ¶ 79(g)). Moreover, as noted above, the allegations here take on an even more troubling cast, given that the transfer of shares to Defendants would have allegedly given them the opportunity to vote in the proxy solicitation and presumably diluted the value of the other shareholders' stock holdings. (*See id.* ¶ 43 (alleging that it was in the interest of Defendants' former client, Farley, "to issue shares to friendly parties to potentially vote against the proxy contest and save Farley's job and control of [the Company].").)

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

Based on all of these allegations, the Court concludes that Plaintiff has adequately pleaded that Defendants acted negligently, both in representing Plaintiff in the proxy solicitation and in entering into the shares-for-fees agreement.

### 2. Plaintiff Has Adequately Alleged Proximate Cause and Damages.

As for the remaining elements of a legal malpractice claim – proximate causation and damages – Plaintiff alleges in its Complaint that, "[a]s a direct and proximate result of each [ ] [Defendant]'s failure to exercise the required care, skill, and diligence [in connection with the shares-for-fees transaction], [Defendants] were issued a total of 1,242,711 of [Plaintiff's] shares at below market value." (Compl. ¶ 80.) Plaintiff alleges that, as a result of Defendants' negligence, they were "not entitled to any fees for any services rendered to [Plaintiff]" (*id.* ¶ 82), but, in any event, the stock issuance – which, as described above, Defendants allegedly negotiated from a conflicted position (*see* Discussion, *supra*, at Section II(A)(1)); *see also* Compl. ¶¶ 79(e)-(k) – resulted in their being paid a "grossly disproportionate" and "excessive fee" for the legal services they provided (*id.* ¶¶ 79(l)-(m).) More specifically, Plaintiff alleges that, as a proximate result of their negligent conduct (*see id.* ¶ 80), Defendants received shares valued "on the day of issuance at $93,451.86 in exchange for only $38,524.26 of legal work" (Compl. ¶ 117-19.) Plaintiff also alleges that, as a "direct and proximate result" of Defendants' negligence, "[Plaintiff] has been required to incur substantial legal expenses in rescinding the shares issued to Defendants." (*Id.* ¶ 81.)

Defendants argue that "the Proxy Solicitation was ultimately successful, which effectively precludes [Plaintiff] from being able to argue that ... Defendants' efforts in response to the same caused any harm to [Plaintiff]." (Def. Mem., at 14.) Yet, regardless of whether the proxy solicitation was ultimately successful, Plaintiff need only plausibly allege that "but for the malpractice, ... [it] would not have sustained some actual and ascertainable damage," *Prout*, 316 F. Supp. 3d at 799 (citing *Schwartz*, 302 A.D.2d at 198), and it has done this. At a minimum, Plaintiff's "allegations raise a reasonable inference that [Defendants] would not have entered into the [shares-for-fees transaction] had it complied with its Rule 1.8 obligations." *Applied Energetics, Inc.*, 2020 WL 2833686, at *4 (finding that "had Stein Riso done a proper investigation into the true fair market value of [Plaintiff's] stock, it would

have realized that the ... Subscription Agreement ... was not fair to [Plaintiff]").

As, if nothing else, Plaintiff allegedly "suffered the direct loss of the value of the shares that it improperly issued to [Defendants]," *Applied Energetics, Inc.*, 2020 WL 2833686, at *4, the Court concludes that Plaintiff has adequately pleaded that it sustained damages proximately caused by Defendants' negligence, *see id.*; *see also Even Street Prods. Ltd.*, 643 F. Supp. 2d at 322 (noting, in the context of a Rule 12(b)(6) motion, that, "[a]t this early stage of the litigation," the plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim"). Accordingly, Defendants' motion to dismiss Plaintiff's legal-malpractice claim must be denied.

### B. To the Extent Plaintiff's Claim Under the NYRPC Is Based on Alleged Violations of Rules 1.7 and 1.8, the Claim Is Dismissed as Duplicative of Plaintiff's Legal-Malpractice Claim.

**\*17** Plaintiff's separate claim for "rescission and restitution/recoupment" of the shares issued to Defendants is based solely on Defendants' alleged violations of NYRPC Rules 1.5, 1.7, and 1.8. (*See* Compl. ¶¶ 83-124.) Although, standing alone, Rules 1.7 and 1.8 (addressing attorney conflicts of interest) do not create a private right of action, *see Cohen*, 115 A.D.3d at 513, Plaintiff's allegations regarding Defendants' violations of these rules may, as discussed above, support Plaintiff's legal-malpractice claim, on the element of negligence, *see, e.g.*, *Applied Energetics*, 2020 WL 2833686, at *3. Thus, those allegations are properly raised within the context of Plaintiff's pleaded malpractice claim, and any separate claim that Plaintiff may be trying to assert based on the asserted violations of Rules 1.7 and 1.8 is appropriately dismissed as duplicative. *See Applied Energetics*, 2020 WL 2833686, at *5.

### C. Under NYRPC 1.5, Plaintiff Has Adequately Pleaded a Claim For Rescission of Its Fee Agreement With Defendant, and Restitution or Recoupment of Fees Paid.

The Court's analysis is different with respect to Rule 1.5. That Rule, as set out above, prohibits an attorney from entering into an agreement with a client for "an excessive or illegal fee or expense," NYRPC Rule 1.5(a), and, as previously noted, a violation of the rule may give rise to a claim, by the client, for rescission of the agreement (*see* Discussion, *supra*, at Section I(C)(1); *see also Seippel*, 341 F. Supp. 2d at 380) –

Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC, Not Reported in Fed. Supp....

2022 WL 956119

an equitable remedy that Plaintiff says it is not seeking on its legal-malpractice claim (*see* Pl. Mem., at 24). In addition, or in the alternative, a violation of Rule 1.5 may permit the client to claim "restitution or recoupment of legal fees paid in excess of the reasonable amount due to the attorney for services actually rendered." *Seippel*, 341 F. Supp. 2d at 380.

Defendants' contention that Plaintiff's citation to *Seippel* misrepresents the decision's holding (*see* Def. Reply Mem., at 15-17) is convincing only to the extent that Plaintiff has sought to rely on *Seippel* to support a free-standing claim for relief based on violations of all three of the rules that Plaintiff cites – Rules 1.5, 1.7, and 1.8. The relevant portion of *Seippel* relates specifically to fee agreements, not to conflict-of-interest rules, and it lends no support to Plaintiff's contention that the violation of *any* of the NYRPC rules could support an independent claim for relief, wherever the violation would "not amount to malpractice." (Pl. Mem., at 23.) Such a notion would entirely swallow the well-established precedent that, as a general matter, violations of the rules of professional conduct do not, in and of themselves, give rise to private rights of action. While the Court finds *Seippel* persuasive on the narrow point that, where an attorney has entered into an agreement for excessive fees, the client may sue to rescind the agreement and/or recover the excessive fees paid thereunder, the Court does not read *Seippel* to stand for any broader principle, and the Court will not expand existing law here.

As to whether Plaintiff has adequately pleaded a claim for rescission of Defendants' shares-for-fees agreement (or restitution/recoupment) based on Rule 1.5, the Court finds that it has. The Complaint alleges, *inter alia*, that the value of the shares issued to Defendants was worth, on the market, more than twice the amount of the fees that were then said by Defendants to be owed for their services. (*See* Compl.

¶¶ 115-19.) Although Defendants emphasize that the stock it received was "restricted" (*see* Def. Mem., at 3, 4, 6, 8, 19), and also assert in their motion papers that the discount they received on the market price-per-share was the same or similar to that offered by Plaintiff to others at the time (*see id.*, at 19), these are issues of fact regarding the fairness of the transaction that do not render the claim for rescission and/or restitution and recoupment inadequately pleaded, for purposes of Rule 12(b)(6).

**\*18** Accordingly, Plaintiff's second cause of action is appropriately dismissed to the extent it is based on Rule 1.7 and 1.8, but not to the extent it is based on Rule 1.5.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss (Dkt. 25) is granted in part and denied in part. Specifically:

(1) the motion is granted as to Plaintiff's second cause of action (for rescission and restitution/recoupment for alleged violations of the NYRPC), to the extent that claim is based on alleged violations of NYRPC Rules 1.7 and 1.8; but

(2) the motion is denied as to Plaintiff's first cause of action (for legal malpractice) and is also denied as to Plaintiff's second cause of action, to the extent that claim is based on an alleged violation of NYRPC Rule 1.5.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 956119

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## Filings (11)

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment** <br> APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants. <br> 2025 WL 2346924 | — | S.D.N.Y. | Apr. 24, 2025 | Motion |
| **2.  Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment** <br> APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants. <br> 2024 WL 6472250 | — | S.D.N.Y. | Oct. 28, 2024 | Motion |
| **3.  Memorandum of Law Submitted By Defendants Gusrae Kaplan Nusbaum PLLC and Ryan Whalen, Esq. in Support of Their Motion for Summary Judgment** <br> APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants. <br> 2024 WL 6472251 | — | S.D.N.Y. | Oct. 28, 2024 | Motion |
| **4.  Reply Memorandum of Law Submitted by Defendants Gusrae Kaplan Nusbaum PLLC and Ryan Whalen, Esq. in Support of their Motion to Dismiss Plaintiff's Complaint** <br> APPLIED ENERGETICS, INC, a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants. <br> 2021 WL 7707639 | — | S.D.N.Y. | July 13, 2021 | Motion |
| **5.  Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint** <br> APPLIED ENERGETICS, INC, a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC and Ryan Whalen, Defendants. <br> 2021 WL 7707637 | — | S.D.N.Y. | June 25, 2021 | Motion |
| **6.  Memorandum of Law Submitted by Defendants Gusrae Kaplan Nusbaum PLLC and Ryan Whalen, Esq. in Support of their Motion to Dismiss Plaintiff's Complaint** <br> APPLIED ENERGETICS, INC, a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants. <br> 2021 WL 7707638 | — | S.D.N.Y. | May 28, 2021 | Motion |
| **7.  Expert Rebuttal Report of Professor Roy D. Simon, Jr.** <br> APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants. <br> 2025 WL 1237823 | — | S.D.N.Y. | Feb. 26, 2025 | Expert Materials |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **8.  Supplemental Expert Report of Nicole I. Hyland**<br>APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants.<br>2025 WL 1237825 | — | S.D.N.Y. | Feb. 26, 2025 | Expert Materials |
| **9.  Expert Report of Nicole I. Hyland**<br>APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants.<br>2024 WL 5672037 | — | S.D.N.Y. | Oct. 28, 2024 | Expert Materials |
| **10.  Expert Report of Professor Roy D. Simon, Jr.**<br>APPLIED ENERGETICS, INC., a Delaware Corporation, Plaintiff, v. GUSRAE KAPLAN NUSBAUM PLLC, and Ryan Whalen, Defendants.<br>2023 WL 12093876 | — | S.D.N.Y. | Aug. 16, 2023 | Expert Materials |
| **11.  Docket 1:21-CV-00382**<br>Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC et al | — | S.D.N.Y. | Jan. 15, 2021 | Docket |

**History (2)**

**Direct History (1)**

1. Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC
2022 WL 956119 , S.D.N.Y. , Mar. 30, 2022

**Related References (1)**

2. Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC
2025 WL 2662330 , S.D.N.Y. , Sep. 17, 2025

**WESTLAW**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.